STATE of Maine

v.

**Elvin CARMICHAEL.**

Supreme Judicial Court of Maine.

Argued March 16, 1982.

Decided April 20, 1982.

David M. Cox, Dist. Atty., Gary F. Thorne, Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Libhart, Ferris, Dearborn, Willey & Ferm, Joel A. Dearborn (orally), N. Laurence Willey, Brewer, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, VIOLETTE and WATHEN, JJ.

ROBERTS, Justice.

Elvin Carmichael appeals his conviction of gross sexual misconduct, 17–A M.R.S.A. § 253, following a jury trial in Superior Court, Penobscot County. Only three of the seven errors Carmichael claims on appeal merit discussion. Those three involve allegations of (1) noncompliance with the *Miranda* requirements by a police officer, (2) a variance between the indictment and proof at trial, and (3) various discovery violations. We affirm the judgment of conviction.

I.

At trial the following evidence was produced. The victim, five years of age at the time of the incident and seven at the time of trial, testified that in the spring of 1980 Carmichael touched his "pee-pee" to her "pee-pee" while she was in bed without any clothes on. Sergeant Love of the Maine State Police testified that Carmichael admitted to him that "on one occasion . . . he had put his penis against [the victim's] vaginal area." Detective Pratt of the Maine State Police testified that Carmichael made a similar admission to him. The defendant testified at trial that he had never engaged in a sexual act with the victim. Other defense testimony was introduced in an attempt to show that at the time she claimed

the incident occurred the victim was aggressive, provocative, preoccupied with sexual matters and tended to have fantasies.

## II.

■ Carmichael argues first that the court erred by admitting the testimony of Officer Love. On May 8, 1980, Love drove Carmichael from his home to State Police Headquarters in Augusta where he turned Carmichael over to Detective Pratt. Pratt first fully advised Carmichael of his fifth amendment rights, reading from a standard *Miranda* form which Carmichael signed. Pratt then conducted four separate polygraph examinations from approximately 10:00 a. m. until approximately 1:00 p. m. At the conclusion of the tests Carmichael again signed the waiver form. Pratt left and Love entered the room. Love offered Carmichael a cigarette and the two men had a conversation at which time Carmichael admitted he had "put his penis up against [the victim's] vaginal area."

Prior to trial, Carmichael moved to suppress the statement he made to Love. The Superior Court denied Carmichael's motion finding that (1) Carmichael's statements to Love were made voluntarily; (2) the statements were not the result of custodial interrogation; (3) *Miranda* warnings were not required; (4) the warnings, however, were fully given; (5) Carmichael was aware of his rights when he made the statements and (6) Carmichael knowingly and intelligently waived his rights.

We need not determine whether Carmichael's statements were, in fact, the product of custodial interrogation, *see State v. Philbrick*, Me., 436 A.2d 844 (1981), as we find that the police here fully apprised Carmichael of his fifth amendment rights. Carmichael does not deny that Detective Pratt fully advised him of his fifth amendment rights. He claims, however, that a break occurred between the questioning by Pratt and the questioning by Love and that Love was required to readvise him of his rights. We do not agree. *State v. Myers*, Me., 345 A.2d 500 (1975) enunciates the proper standard to be applied in a situation such as

this. We applied the *Myers* standard to a factual pattern quite similar to that of the case at bar in *State v. Ruybal*, Me., 398 A.2d 407 (1979). Applying the *Myers* standard here we conclude that the warnings given Carmichael were sufficient to put an individual of average intelligence and awareness on notice that *any* incriminating statements made at *any* time to the police officers could be used against him. *Ruybal*, 398 A.2d at 413. We find no merit in Carmichael's contention that the warnings he received were limited in their scope to be effective only for the purpose of his interview with Pratt.

## III.

Carmichael next argues that the trial court erred by admitting evidence tending to show that the crime occurred in the spring of 1980. He complains that evidence tending to show the crime occurred in the spring of 1980 should not have been permitted as time was an essential element of the crime and the indictment alleged the crime occurred in the fall of 1979. This error, argues the defendant, should have required the trial court to grant a motion for judgment of acquittal and should require this Court to reverse his conviction.

■ The defendant misapprehends the nature of the relief to which he may be entitled when there is variance between the date alleged in the indictment and the proof at trial. A criminal defendant has the right to demand the nature and cause of the accusation. Me.Const., art. I, § 6. The indictment here was sufficient to inform the defendant of the nature and cause of the accusation against him. *See State v. St. Clair*, Me., 418 A.2d 184, 189 (1980). A variance between allegation and proof at trial will justify the entry of a judgment of acquittal only when the State, as a result, fails to prove the crime alleged. No such failure occurred here.

■ With respect to the date of the offense "[t]he settled rule of law is that . . . proof of the commission of the offense on any day within the statute of limitations,

regardless of the date alleged in the indictment is not a material variance unless it prejudices the defendant." *State v. St. Clair*, Me., 418 A.2d 184, 187 n.4 (1980), *quoted in State v. Terrio*, Me., 442 A.2d 537, 540 (1982). Given the circumstances of this case, we find no prejudice which occurred as a result of the variance between indictment and proof at trial. Carmichael did not move for a bill of particulars. *See* M.R.Crim.P. 16(c)(2). In the absence of the specificity provided by a bill of particulars a temporal variance between the allegations of the indictment and proof at trial is not fatal to this conviction.

We do not say that a criminal defendant who is surprised by evidence at variance from the allegations against him is without relief. Should a criminal defendant actually be surprised by the proof presented at trial he can, of course, assert surprise as grounds for a continuance or possibly a mistrial. *See State v. Simmons*, Me., 435 A.2d 1090, 1094 (1981). Here, defense counsel failed to move for any such relief. He did not object to the testimony nor did he assert surprise, ask for a continuance or move for a mistrial. Rather, defense counsel waited until the State had rested and then relied on what he termed a variance to move for a judgment of acquittal. The trial court's denial of that motion was correct. As defendant failed to seek any other form of relief, the issue of the availability of such relief is not now before us and we make no comment thereon.

### IV.

Carmichael's final argument which merits discussion regards alleged discovery violations by the State. The first violation, the defendant argues, was the State's failure to obey a pretrial order of the Superior Court ordering the State to turn over a report of a psychiatrist or psychologist regarding the victim of the crime.[1] The record does not reveal that the Superior Court ever entered such an order.

█ The second violation claimed by Carmichael concerns the State's failure to advise him that the victim would testify that the crime occurred in the spring of 1980 rather than the fall of 1979. We note again that when the victim testified that the crime occurred in the spring of 1980 defense counsel failed to object, failed to assert surprise, failed to ask for a continuance and failed to move for a mistrial. *See Simmons*, 435 A.2d at 1094. Rather, defense counsel waited until the State had rested and moved for a judgment of acquittal. Given these circumstances, any discovery violation here does not constitute grounds for relief on appeal.

█ Carmichael's final argument regarding discovery violations relates to the testimony of Sergeant Love. At trial Love testified for the first time that when he interviewed Carmichael in Augusta, Carmichael told him eleven or twelve times that he, Carmichael, needed help. We note, however, that a Maine State Police Report written by Love, a copy of which the State had given defense counsel, twice refers to Carmichael as stating he needed help. Moreover, at trial when Love testified that Carmichael told him he needed help, defense counsel objected to this testimony only on the grounds that there had "been no corpus delicti whatever shown in this case."[2] Counsel again did not ask for a continuance. Nor did counsel ask the court to reconsider the motion to suppress in light of this testimony. Again, if any discovery violation

---

1. In his brief to this Court Carmichael apparently functions under the misapprehension that an absolute right of discovery exists regarding such information. The mere fact a potential witness may have sought psychiatric care does not generate an absolute right of the defense to examine any evaluations which might exist as a result of such care.

2. In view of the fact that the victim's testimony preceded that of Love we find no merit in the argument that no corpus delicti had been proved. We do not decide, however, and intimate no opinion upon the continued validity of the order of proof requirement subsequent to the promulgation of M.R.Evid. 611(a). *See State v. Roy E.S.*, Me., 440 A.2d 1025, 1027 n.2 (1982); *State v. Snow*, Me., 438 A.2d 485, 487 n.2 (1981).

exists in this context, it does not require relief on appeal.

Carmichael also argues (1) that the court erred by denying his motion in limine brought to exclude the victim's testimony, (2) that the court erred by excluding certain testimony of defense witnesses, (3) that his rights to a speedy trial were violated and (4) that there was insufficient evidence to support the conviction. A careful review of the record shows the trial court's rulings were correct and indicates there was suffi-cient evidence presented to support the conviction.

The entry is:

Judgment affirmed.

All concurring.