**STATE of Maine**

v.

**Ira WALKER.**

Supreme Judicial Court of Maine.

Argued Jan. 10, 1986.

Decided March 25, 1986.

R. Christopher Almy, Dist. Atty., Philip Worden (orally), Asst. Dist. Atty., Bangor, for the State.

Vafiades, Brountas & Kominsky, Jeffrey L. Hjelm (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN AND SCOLNIK, JJ.

NICHOLS, Justice.

Ira Walker, the Defendant, brings this appeal following his conviction in a jury trial in Superior Court (Penobscot County) of two counts of Gross Sexual Misconduct, 17–A M.R.S.A. § 253(1)(B) (Supp.1985–1986). He argues on appeal that he was prejudiced by the State's failure to allege and establish the exact dates on which the crimes were committed, that the court erred in refusing to order the victim to submit to psychological testing, that three evidentiary rulings were erroneous, that the court improperly consolidated two counts of the indictment, and that there is

insufficient evidence to support the conviction.

Finding no merit in his arguments, we affirm the judgments of conviction.

In January 1983 the victim, together with her mother, brother and sister, was living in Brewer with the Defendant who was her stepfather. At trial the victim testified that the Defendant first had sexual intercourse with her in Brewer while her mother was in the hospital in January, 1983. She further stated that the Defendant had sexual intercourse with her on three other occasions, once more in Brewer and twice after the family moved to Bangor in April, 1983. On the stand she was not able to recall the dates on which these encounters took place nor could she remember in what rooms they had occurred. The victim's mother was not home on any of the four occasions.

The victim did not immediately tell anyone about these encounters with the Defendant, but she did tell her mother that another individual had been sexually abusing her. This individual, a friend of the Defendant's, had lived with the Walker family for a time. It was not until May 23, 1984, when at school she saw a film about sexual abuse of children, that the victim implicated the Defendant.[1] After seeing the film, the victim approached the school guidance counselor and reported to her that the Defendant had had sexual intercourse with her. The guidance counselor notified police, who later arrested the Defendant.

The Defendant took the stand on his own behalf and testified that he himself was ill in January, 1983, when the victim's mother was in the hospital. Although he felt weak, he nonetheless visited his wife there before he himself entered the hospital. During those visits he left the friend previously alluded to at home with the children.

---

1. There was evidence that the fourth incident of sexual intercourse occurred two or three days before the victim saw the film.

The Defendant admitted that the victim's mother would occasionally go out and leave him alone with the children and that he may have been alone with the victim. He flatly denied ever having sexual intercourse with the victim, however.

On June 4, 1984, a Penobscot County grand jury indicted the Defendant on four counts of gross sexual misconduct.[2] The Defendant initially pleaded not guilty but soon changed the plea. The court, stating it would not accept the State's sentencing recommendation, later permitted him to withdraw the guilty plea. Thereafter, the Defendant filed numerous motions, among them a motion for a bill of particulars and a motion to compel the victim to submit to psychological testing. The court denied both motions, observing that the State had that day filed a bill of particulars.[3] On January 18, 1985, he moved to dismiss Counts I, II and III of the indictment as modified by the bill of particulars. The court denied the motion. Subsequently the Defendant renewed his objection to the indictment and bill by moving for a judgment of acquittal at the close of the State's case. The presiding justice responded by denying the motion as to Count I, granting the motion and dismissing Count II, and denying the motion as to Counts III and IV. The justice merged Counts III and IV into a single count. A renewed motion for judgment of acquittal on the remaining counts was denied at the close of all the evidence. The jury convicted the Defendant, and he appealed.[4]

The Defendant first argues that the indictment and bill of particulars are fatally defective because the periods of time in which the offenses are alleged to have been committed are so broad that he was deprived of the ability to prepare an effective defense. The Defendant maintains that his trial strategy was to present evidence that he was not home alone with the victim on the dates set forth in the indictment, so that he could not have committed the acts charged. This strategy was frustrated, he contends, by the bill of particulars in that the bill broadens the temporal allegations of the indictment so greatly that any alibi defense became ineffective.

 We have observed before that time is not an element in the crime of gross sexual misconduct, except insofar as the State must show that the victim was underage when the offense was committed. *State v. Drown,* 447 A.2d 466, 469 (Me. 1982); *State v. Carmichael,* 444 A.2d 45, 47–48 (Me.1982). Moreover, indictments alleging that a criminal offense occurred "on or about" a particular date do not warrant dismissal for lack of specificity. *Drown,* 447 A.2d at 469. A variance between the date on which the offense is alleged to have occurred in the indictment and the date proved at trial will not be fatal to the conviction unless the Defendant is thereby prejudiced. *Id.; Carmichael,* 444 A.2d at 47–48; *see also State v. Terrio,* 442 A.2d 537, 540 (Me.1982) (quoting *State v. St. Clair,* 418 A.2d 184, 187 n. 4 (Me.1980)).

 The Defendant's principal claim of prejudice is thus that the bill of particulars expands so greatly upon the alleged dates

---

2. The indictment alleges that the Defendant "engaged in sexual acts" with the victim on four separate occasions. The State alleged that the acts occurred on or about June 1, 1983, June 15, 1983, May 14, 1984, and May 25, 1984.

3. In the bill of particulars, the State attempted to specify the dates of the offenses as follows:
 Count I—Between January 1, 1983 and June 1, 1983;
 Count II—Between June 1, 1983 and January 1, 1984;
 Count III—Between January 1, 1984 and May 15, 1984; and
 Count IV—Between May 15, 1984 and May 23, 1984
 The State also specified that the sexual acts the Defendant committed included both sexual intercourse and oral sexual acts.

4. On motion of the Defendant, the record was corrected to reflect that he was convicted on two counts of gross sexual misconduct.

of the sexual acts in the indictment that his ability to mount an effective alibi defense was thwarted. One purpose of a bill of particulars is to help a defendant to prepare an adequate defense by narrowing the scope of the State's proof. *State v. Cote,* 444 A.2d 34, 36 (Me.1982); *State v. Davenport,* 326 A.2d 1, 10 (Me.1974) (quoting *State v. Benner,* 284 A.2d 91, 99 (Me. 1971)). We observe that this bill failed to achieve that purpose, since the State was not able to pinpoint the dates of the offenses any better than it already had in the indictment. In such circumstances, the State should not have attempted to set outer limits upon the temporal allegations in the indictment.[5] The State should not file a bill of particulars if it cannot articulate its allegations with any greater specificity than has already been done in the indictment. We are persuaded by other evidence, however, that the Defendant's ability to prepare an effective defense was not fatally impaired by the bill of particulars.

■ The Defendant's emphasis on the precise dates of the sexual acts is misdirected. He was exposed to two counts of gross sexual misconduct, instead of the original four, after the presiding justice dismissed Count II and merged Counts III and IV. Much of the State's proof on both counts concentrated on two periods of several days' duration, namely, the time period in January, 1983, before the Defendant was admitted to the hospital and the period before the victim saw the sex abuse film in school. We do not agree with the Defendant that he was forced to account for every waking moment during the time encompassed in the bill of particulars. Furthermore, his ability to mount a successful alibi defense was affected in no small way by his own testimony that he sometimes babysat for the children in his wife's absence and that there may have been occasions

when he and the victim were home alone together. We, therefore, conclude that the Defendant was not prejudiced by the breadth of time alleged in the bill of particulars.

The Defendant next challenges the court's denial of his motion to compel the victim to submit to a psychological examination. He contends that such an examination would have been extremely useful in testing the victim's credibility. He argues that the victim's age and the fact that she had also implicated his friend should have led the presiding justice to order the examination and that it was, therefore, an abuse of discretion for the justice to deny the motion. The issue of whether young victims of sexual abuse should be required to undergo psychological testing in order to assess their credibility has never before arisen in this Court.

Courts in most states have held that the grant or denial of a motion to compel victims of sex abuse to submit to psychological testing rests within the sound discretion of the trial judge. *E.g., People v. Glover,* 49 Ill.2d 78, 273 N.E.2d 367, 370 (1971); *Easterday v. State,* 254 Ind. 13, 256 N.E.2d 901, 903 (1970); *State v. Boisvert,* 119 N.H. 174, 400 A.2d 48, 51 (1979); *Gov't. of Virgin Islands v. Sciuto,* 623 F.2d 869, 874–75 (3d Cir.1980). Three factors compelled one court to conclude that such tests were justified: (1) the victim's youth, (2) the fact that she had accused other men of having unlawful sexual contact with her, and (3) her admission at trial that those other accusations were false. *Easterday,* 256 N.E.2d at 903. Another court, however, recognized that victims of sexual assault have substantial privacy rights, so that there must be compelling reasons to require them to submit to psychiatric examinations. *Boisvert,* 400 A.2d at 51.

■ There is nothing in the present case that would lead us to conclude that

5. Since the State filed the bill on its own initiative, we are not required to decide whether the

court should have granted the Defendant's motion.

the Superior Court abused its discretion in denying the Defendant's motion. The victim's age, eleven years at trial, is not noteworthy in itself. There is no presumption whether children under 14 are competent to testify at criminal trials; their competency is to be evaluated at the discretion of the presiding justice. *State v. Pomerleau,* 363 A.2d 692, 695 (Me.1976). Nor is there the slightest evidence the victim in this case fabricated charges of gross sexual misconduct against the Defendant's friend or any other man. The mere fact that she has implicated other men does not, without concrete evidence of fabrication, militate in favor of psychological testing. Furthermore, in light of the privacy interests of sexual abuse victims, we decline to permit the random exploration of their credibility by means of potentially embarrassing psychological tests. The fact that a defendant calls a victim's credibility into question is insufficient justification for psychological testing; her credibility is for the fact finder to determine. *Allen v. State,* 152 Ind.App. 284, 283 N.E.2d 557, 559 (1972). The Superior Court correctly denied the Defendant's motion.

The Defendant also challenges three evidentiary rulings the court made during trial: the exclusion of what the Defendant argues is evidence of specific instances of the victim's untruthfulness admissible under M.R.Evid. 608(b), the exclusion of evidence of the victim's reputation for untruthfulness in a community of league bowlers, and the admission of evidence of the victim's reputation for truthfulness in the community of teachers and students at her school.

 On cross-examination, the Defendant sought to elicit from the victim evidence that her mother had collected certain money from members of a bowling league of which the mother was secretary and that the victim had taken this money. The presiding justice ruled this testimony inadmissible, and the Defendant challenges the ruling on the ground that the testimony is probative of truthfulness or untruthfulness under M.R.Evid 608(b).[6] It is true that, under the rule, specific instances of a witness's conduct must be probative of truthfulness or untruthfulness to be admissible on cross-examination. The evidence may still be excluded, however, in the court's discretion. *See* Field & Murray, *Maine Evidence* § 608.2 at 143 (1976). That discretion was not abused here because there was a risk that this evidence, if admitted, would have injected a collateral issue into the trial and thereby confused the jury.

 The Defendant next contends that the court erred in excluding his own testimony that the victim had a reputation for untruthfulness in a community of league bowlers to which the Defendant and his wife belonged. In a voir dire examination, the Defendant testified that in the "community" of league bowlers, numbering 16–20 persons, the victim had a reputation for dishonesty. Evidence of a witness's character is only admissible in the form of evidence of the witness's reputation for truthfulness or untruthfulness. M.R.Evid. 404(a)(2), 405(a), 608(a)(1). Furthermore, reputation evidence is only admissible if the collective judgment of the community is reliable. *State v. Doherty,* 437 A.2d 876, 878 (Me.1981).

 Here the Superior Court had ample reason to find that the Defendant's testimony was unreliable. The court would

---

6. M.R.Evid. 608(b) provides in relevant part:
 Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may,

however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness....

have been justified in finding the testimony to be only the Defendant's opinion of what the bowlers thought, and therefore inadmissible under M.R.Evid. 405(a). Even if admissible, such an opinion lacks probative value considering the Defendant's self-interest in stating it. We conclude that the court properly excluded the Defendant's testimony concerning the victim's reputation.

The Defendant also challenges the court's ruling permitting the guidance counselor, Eda Morrison, to testify about the victim's reputation for truthfulness in the school community. During a voir dire examination, Ms. Morrison testified that she knew the victim and that the victim had a reputation for truthfulness in the school community. When questioned by defense counsel, Ms. Morrison testified that she had learned about the victim's reputation through discussions with the three fifth grade teachers at the school. She admitted not discussing that reputation with the victim's classmates but said she would have heard from the other students if the victim had a reputation for untruthfulness. The Defendant contends that the guidance counselor had an insufficient basis for testifying about the victim's reputation for truthfulness in the school community.

 We do not think the admission of Ms. Morrison's testimony was more than harmless error, even though her testimony was based largely on her discussions with the three teachers. A "community of two or three people is not broad enough to insure that its collective judgment concerning character is reliable." *Doherty*, 437 A.2d at 878. To be able to testify about a witness's reputation in a community, a person must be familiar with that reputation. Field & Murray, *Maine Evidence* § 405.2 at 72–73 (1976).

We next advert to the Defendant's contention that the court erred in consolidating two counts in the indictment into a single charge. At the close of the State's case, the Defendant moved for a judgment of acquittal on all four counts of the indictment as modified by the bill of particulars. The court dismissed Count II, denied the motion as to Count I, and consolidated Counts III and IV. The court's basis for the consolidation was that the evidence would support only one charge of sexual misconduct, not the two alleged in Counts III and IV.

 By charging in two counts what the court concluded from the evidence was only a single offense, the indictment here suffered from multiplicity. *State v. Myers*, 407 A.2d 307, 309 (Me.1979). Dismissal of the indictment is not the proper remedy for multiplicity. *Id.* (citing *United States v. Ketchum*, 320 F.2d 3, 8 (2d Cir.), *cert. denied*, 375 U.S. 905, 84 S.Ct. 194, 11 L.Ed.2d 145 (1963)). The consolidation of the two counts actually subjected the Defendant to less criminal liability, since the consolidation reduced the number of counts with which he was charged. Furthermore, the Defendant was no more hampered in preparing his defense after the consolidation than he was before it, since the temporal allegations for Counts III and IV in the bill of particulars were not enlarged in any way after the court consolidated the two counts. We conclude that the Superior Court committed no error in consolidating Counts III and IV of the indictment.

 The Defendant's final argument, that there is insufficient evidence to support the conviction, is without merit. The victim's testimony in this case was not contradictory, unreasonable, or incredible. *State v. Pierce*, 438 A.2d 247, 252 (Me. 1981).

The entry, therefore, must be:

Judgments affirmed.

All concurring.