## COMMONWEALTH *vs.* PAUL S. REED.

Plymouth. February 7, 1994 - April 20, 1994.

Present: WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Evidence*, Expert opinion, Credibility of witness, Privileged communication, Medical record, Prison record, Admissions and confessions. *Witness*, Expert, Credibility. *Practice, Criminal*, In camera inspection, Discovery. *Privileged Communication. Constitutional Law*, Admissions and confessions, Waiver of constitutional rights. *Waiver.*

The judge at a murder trial correctly denied the defendant's motion seeking access to a witness's psychiatric records of treatment at the Massachusetts Correctional Institution at Bridgewater for the purpose of obtaining expert opinion testimony on the witness's veracity, where such expert testimony would not have been admissible at trial. [560-561]

The judge at a murder trial properly denied the defendant's motion for access to psychological treatment records of a witness, where the judge concluded, after an in camera inspection of the records, that the records did not contain any relevant material on promises, rewards, or inducements made to the witness for which the defendant sought access to the records. [561-562]

Upon review of the record of a first degree murder trial pursuant to G. L. c. 278, § 33E, this court concluded there was no error in the denial of the defendant's motion to suppress his statements and there was no reason to order a new trial or enter a verdict of a lesser degree of guilt. [563-564]

INDICTMENT found and returned in the Superior Court Department on March 24, 1982.

After the decision of this court in 397 Mass. 440 (1986), the case was retried before *R. Malcolm Graham*, J.

*Roger Witkin & Leo McAuliffe* for the defendant.

*Frank M. Gaziano*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. Convicted of murder in the first degree for the second time, the defendant, Paul S. Reed, appeals. See *Com-*

*monwealth* v. *Reed*, 397 Mass. 440 (1986). On appeal after retrial, the defendant raises a single issue. The defendant claims that he was denied access to the treatment records of the Commonwealth's principal witness, in violation of his rights under art. 12 of the Massachusetts Declaration of Rights.[1] The defendant does not seek reversal or a new trial. His only request is that he be granted access to the treatment records. We conclude that there was no error in denying the defendant's request for the witness's treatment records. We affirm the conviction of murder in the first degree. Pursuant to G. L. c. 278, § 33E (1992 ed.), we have reviewed the entire record and conclude that there is no reason to order a new trial or enter a verdict of a lesser degree of guilt.

*Facts.* Police discovered the body of a young woman, strangled to death, in a wooded area of Middleborough on November 8, 1981. At trial, the Commonwealth's chief witness linking the defendant to the crime was Patton Flannery, an inmate at Massachusetts Correctional Institution, Bridgewater (Bridgewater). Flannery is serving a term of from thirty-six to seventy-two years for rape and assault with intent to commit murder. Flannery and Reed were inmates together at Bridgewater for approximately five years. The two became friends, and Reed continued to visit Flannery after his release.

Flannery testified he told the police that the defendant and his wife had visited him at Bridgewater a week after the murder, and that Reed confessed to him. According to Flannery, Reed admitted picking up the victim hitchhiking, forcing her to perform oral sex, and then strangling her with her blouse. Reed also admitted that he and his wife attempted to cover up the crime by burning Reed's automobile, abandoning the vehicle and reporting it stolen.

Visitation records at Bridgewater indicated that the defendant visited Flannery on November 14, 1981. There also

---

[1] The defendant states that as the issue. In his brief, he also invokes the due process clause of the United States Constitution and the Massachusetts Declaration of Rights as a basis for his appeal.

was evidence that Reed's wife reported their automobile stolen on November 8, 1981. On November 9, police recovered the Reeds' burned station wagon in a wooded area in Plympton, very close to where the defendant's aunt owned a home. The defendant's brother testified that, as a child, Reed frequently picked blueberries and grapes in the remote area where the burned automobile was found. A police chemist testified that a single rabbit hair found in the front seat of the abandoned automobile was similar in color and microscopic characteristics to hair samples taken from the victim's rabbit coat which was found near her body.

The defendant did not testify. The only defense witness was the previous owner of the Reeds' automobile who testified that she kept rabbits as pets and often transported them in the vehicle. The primary theory of the defense was that Flannery was biased, prejudiced, and motivated to lie by his desire to improve his conditions of incarceration and expedite his release.

1. *Access to treatment records.* The defendant sought access to all of Flannery's Bridgewater "treatment" records. Flannery's records consisted of two binders, one containing administrative records, the other psychological treatment records. In support of his discovery motion, defense counsel alleged that Flannery was "in all probability" a pathological liar. He requested that a defense expert be permitted to review Flannery's psychiatric files in order to obtain expert opinion testimony "on Flannery's veracity based upon his Bridgewater records."[2] According to the defendant, the records would "provide a background and foundation" for the expert's opinion.

The Commonwealth contends that the issue of Flannery's credibility was not a proper subject of expert testimony. Because expert testimony on Flannery's "capacity to tell the truth" would have been inadmissible, the Commonwealth ar-

---

[2]The judge did not make explicit findings with respect to the privileged status of the documents. We assume, for purposes of discussion, that the records are privileged.

gues that the judge correctly denied the defendant's request for the records. We agree.

It is well settled that an expert may not offer an opinion on a witness's credibility. See *Commonwealth* v. *Ianello*, 401 Mass. 197, 202 (1987). See also *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982); P.J. Liacos, Massachusetts Evidence 364 (6th ed. 1994).[3] The issue of credibility of a witness includes both the individual's ability and willingness to tell the truth. *Ianello, supra* at 202, citing *Commonwealth* v. *Widrick*, 392 Mass. 884, 888 (1984). Expert testimony, offered by the defendant, on Flannery's veracity would have been inadmissible. See *Commonwealth* v. *Montanino*, 409 Mass. 500, 504 (1991). Thus, it was not an appropriate basis for discovery of the witness's treatment records. There was no error in denying the defendant access to the records on that basis.

Defense counsel also requested access to Flannery's records in order to inspect them for exculpatory evidence consisting of rewards, inducements, or promises made to Flannery in exchange for his testimony. Defense counsel submitted an affidavit which stated that after testifying at Reed's first trial, Flannery was permitted to participate in a community access program, which allowed him to leave the Bridgewater facility in order to work in the community. Defense counsel asserted, "[i]t is obvious that Flannery is being rewarded for his testimony in the Reed case."

Defense counsel submitted an affidavit stating his grounds for believing the records contained evidence of promises, in-

---

[3]Other courts also follow this long-standing rule. See, e.g., *United States* v. *Azure*, 801 F.2d 336, 340-341 (8th Cir. 1986); *State* v. *Moran*, 151 Ariz. 378, 382-383 (1986); *People* v. *Visgar*, 120 Ill. App. 3d 584, 593 (1983); *State* v. *Walker*, 506 A.2d 1143, 1148 (Me. 1986); *State* v. *Saldana*, 324 N.W.2d 227, 231-232 (Minn. 1982); *People* v. *Souvenir*, 83 Misc.2d 1038 (N.Y. 1975); *Gale* v. *State*, 792 P.2d 570, 576 (Wyo. 1990). See also *People* v. *Beckley*, 434 Mich. 691, 728 (1990), citing *State* v. *Moran, supra* at 385 ("Psychologists and psychiatrists are not, and do not claim to be, experts at discerning truth. Psychiatrists are trained to accept facts provided ⸳ by their patients, not to act as judges of patients' credibility").

ducements, or rewards. In particular, defense counsel pointed to Flannery's ability to leave the Bridgewater facility, unsupervised, daily from 9 A.M. to 6 P.M., and the improvement in his living conditions after testifying at Reed's first trial. The Commonwealth repeatedly denied that it had made any promises or rewards to Flannery.

Based on the defendant's assertions, a judge of the Superior Court determined that in camera review of the records was justified. See *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 58 (1987). After reviewing the records, the judge found them to be "devoid of any such indication . . . [of] favored treatment or consideration." Having ascertained that the records did not contain relevant material on promises, inducements, or rewards, the judge properly denied the defendant's request for access to privileged communications.[4] See *Pennsylvania* v. *Ritchie, supra.* See also *Commonwealth* v. *Stockhammer*, 409 Mass. 867 (1991); *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993) (*Stockhammer* and *Bishop* were decided after defendant's trial).

Defense counsel was able to conduct a thorough cross-examination of Flannery. Defense counsel impeached Flannery's credibility with his prior criminal convictions. Defense counsel also impeached Flannery with a written document listing the "guarantees" Flannery sought from Bridgewater officials in exchange for further testimony and cooperation. Defense counsel showed the jury photographs of Flannery's improved living quarters, which he referred to as the "cottage." Defense counsel brought out that Flannery was not happy with his parole date of August 15, 1998.

In addition, the jury was made fully aware of Flannery's freedom to leave the Bridgewater facility in his own automobile due to his participation in the community access program. Flannery told the jury that he came to court unes-

---

[4]The records were not submitted with the briefs as a part of the record appendix or as an exhibit. We requested that the records be submitted to us. We have reviewed the records. We agree with the trial judge that the records contained no evidence of promises, inducements, or rewards made by the Commonwealth.

corted in his own car, and that he was paid a witness fee each day. Flannery admitted that he decided to testify in part so that he "would be seen in a good light" by the parole board. Similarly, defense counsel's argument to the jury focused on Flannery's motivation to lie and his desire for personal rewards. The thorough and vigorous cross-examination and defense counsel's argument brought the issue of Flannery's credibility to the jury's attention with force and clarity.

Last, we note that the Commonwealth had an ongoing duty to disclose exculpatory evidence to the defendant. See *Brady* v. *Maryland*, 373 U.S. 83 (1963). The Commonwealth has consistently denied that any promises, inducements, or rewards were made to Flannery in exchange for his testimony.[5] The judge's in camera review of the records confirmed that no promises, inducements, or rewards were made to Flannery. There was no error in denying defense counsel access to the records.

2. *G. L. c. 278, § 33E.* Pursuant to G. L. c. 278, 33E, we also review the denial of defense counsel's pretrial motion to suppress. Defense counsel moved to suppress all statements made by the defendant to police officers when he was arrested in Cary, North Carolina. The defendant argued that his arrest in North Carolina for a probation violation was a pretext, and that he was never given his Miranda warnings with respect to the charge of murder.

After an evidentiary hearing, a judge in the Superior Court found that the arrest was not a pretext. He found no evidence of trickery or deceit on the part of the police. The defendant knew the police wanted to question him in relation to the Middleborough murder. The judge found that the police twice warned the defendant pursuant to *Miranda* v. *Arizona*, 384 U.S. 436 (1966). The defendant signed two writ-

---

[5]The parties assumed, for the purposes of argument, that the Department of Mental Health had the authority to grant rewards to Flannery in exchange for his cooperation with the Commonwealth. In those circumstances, *Brady* v. *Maryland*, 373 U.S. 83 (1963), would require the prosecution to turn over any exculpatory material in the records.

ten waiver forms. After examining the totality of the circumstances, the judge concluded the defendant's waiver was knowing, intelligent, and voluntary. See *Commonwealth v. Medeiros*, 395 Mass. 336, 345 (1985). There was no error in denying the defendant's motion to suppress.

We have examined the whole record to determine whether justice requires that a new trial be ordered or a verdict of a lesser degree of guilt be entered. We conclude that such relief is not required or appropriate.

*Judgment affirmed.*