Agnes, A. J.
This is a civil case in which the plaintiff seeks judicial review under the state Administrative Procedure Act of a determination by a hearing officer of the defendant Department of Social Services (“department”) that a decision by the department that an allegation that he had physically abused his son was supported. See 110 C.M.R. §4.32(1) (following an investigation of a report of abuse, G.L.c. 119, §5 IB, the department shall make a determination whether the report is “supported” or “unsupported”). For the reasons that follow, the plaintiffs motion for judgment on the pleadings is AFFIRMED, and the Department’s decision is hereby VACATED.
BACKGROUND[1]
1. The investigation and preliminary Proceedings. Plaintiff and Jane Ralowicz (“Ms. Ralowicz”) are the parents of Samuel, born September 16, 1988. They have been divorced for several years with Ms. Ralowicz retaining custody of Samuel. On September 11, 1997, the Department received a report of neglect from a mandated reporter pursuant to G.L.c. 119, §51 A. The report alleged that plaintiff hit Samuel in the head two times and slapped him in the face while they were vacationing in Wisconsin together in August of 1997. The Department screened-in the report as “Non-Emergency Response,” and thereafter assigned the case to Catherine Keratsopoulos (“the Investigator”), for a ten-day investigation.
During the course of the investigation, the Investigator interviewed Ms. Ralowicz, Samuel and the child’s therapist. She was informed that prior to the filing of the 51A report, Ms. Ralowicz had expressed concerns regarding Samuel’s visits with the plaintiff. Ms. Ralowicz stated that Samuel repeatedly complained that plaintiff had hit him during these visits. Further, she stated that on several occasions, Samuel phoned her and asked to come home because he was being abused. Thereafter, Ms. Ralowicz called police and requested that they check on Samuel. She alleges that Samuel confirmed to police that plaintiff had hit him, but that police could not remove him from the home because there were no visible signs of injury. In addition, Ms. Ralowicz told the Investigator that Samuel stated to her that plaintiff had hit him two times on the head and slapped him during their vacation in Wisconsin. As a result, Ms. Ralowicz obtained a court-issued restraining order against plaintiff.
Samuel disclosed to the Investigator that plaintiff had hit him in the past and that while they were on vacation, plaintiff hit Samuel on the head twice and slapped him in the face. Samuel stated that while they *382 were sleeping in the camper, he accidentally bumped plaintiff on the leg and plaintiff had responded by hitting him in the head twice using an open hand. In addition, Samuel stated that at that time he did not want to visit with the plaintiff, but that he eventually would want to see him.
The investigator also spoke with Samuel’s therapist who stated that in her opinion there was “no doubt" the Samuel was telling the truth about the plaintiff intentionally striking him. Based on their therapeutic relationship which spanned over several years, the therapist reached the conclusion that Samuel was credible. Further, the therapist stated that Samuel had disclosed to her that plaintiff had hit him in the past.
On September 17, the Investigator attempted to contact plaintiff but was unsuccessful. She left a message on his answering machine requesting that the plaintiff contact her. On September 18, plaintiff called the Investigator and was angry that the Investigator had not tried to contact him. The Investigator stated that she had called him and left a message. Plaintiff stated that he had not received the message, but that there could have been a problem with his machine. When asked to discuss the allegations of abuse against him, plaintiff denied hitting Samuel while on vacation. Further, plaintiff stated that Samuel was “coerced” by Ralowicz to lie about being abused and that she was trying to manipulate Samuel.
On September 18, 1997, the Department supported the 5IA report in accordance with G.L.c. 119, §5IB and concluded that plaintiff physically abused his son Samuel. Plaintiff filed a timely appeal with the Department requesting a fair hearing pursuant to 110 C.M.R. §10.06. On June 6, 1998, a fair hearing was held at which time testimony was received from both the Investigator and plaintiff. On November 16, 1998, the Hearing Officer concluded that a reasonable basis existed to supported that allegation of physical abuse. Subsequently, plaintiff filed an appeal to the superior court under G.L.c. 30A. On September 28, 1999, based on a joint motion by the parties, the court (McEvoy, J.), remanded the case for a new fair hearing because the audio recording of the initial hearing was inaudible.
On January 3, 2000, plaintiff requested the issuance of subpoenas for Samuel, Ms. Ralowicz and various DSS personnel. Ms. Ralowicz informed the Department that Samuel’s therapist, Guardian Ad Litem, and his legal counsel felt that if Samuel were to testify, it could cause harm to his psychological development and healing, as well as his relationship with his father. Further, Ms. Ralowicz stated that she was having a difficult pregnancy, and the stress of testifying could put her unborn child in jeopardy. As a result, the Director of the Department’s Fair Hearings Unit vacated the subpoenas pursuant to 110 C.M.R. §10.13(c) for both Samuel and Ms. Ralowicz.[2]
2. The Fair Hearing. On March 21, 2000, the Department held a second fair hearing. The persons who testified at this hearing were the investigator who had supported the allegation of abuse, two other DSS staff persons, and the plaintiff. Neither the child, his mother nor the therapist testified. The investigator testified as to her discussions with Samuel, Ms. Ralowicz and Samuel’s therapist. She related not only the factual statements made by these individuals concerning the report of abuse by Samuel, but also her opinion and belief that the child, Samuel, was credible, R. 7, para. 18, her opinion that the mother was trustworthy and credible, R. 7, para. 17, and the fact that the therapist also had formed the opinion that “there was ‘no doubt’ that Samuel was telling the truth about Appellant intentionally hitting him." R. 7, para. 12. The investigator also testified that Samuel was credible because he had told a story of being abused in a consistent fashion to several individuáis. The plaintiff testified and denied that he had hit or slapped Samuel or otherwise abused him at any time. T. 76-80.
The Hearing Officer concluded that the plaintiff had failed to establish by a preponderance of the evidence that the department’s decision to support the allegations of physical abuse was not in conformity with the department’s regulations and thus affirmed the department’s decision. R. 11. The Hearing Officer’s reasoning, in pertinent part, is as follows:
[B]ecause there were no witnesses to the incident . . . and because there were no visible signs of physical injury at the time the report was filed, the case hinges on whether the child should be believed. The Department’s investigator believed the child was credible. The investigator interviewed Samuel in private, for approximately forty minutes. She observed Samuel’s demeanor and noted he was verbal, engaging and comfortable when he disclosed the abuse to her. He described the incidents in the same way he had described them to his therapist.
The investigator testified that she has twenty years of experience . . . [t]he investigator felt “completely assured of the child’s truthfulness” when he disclosed the abuse to her. The Appellant offered no evidence to contradict the investigator’s determination of Samuel’s credibility.
Samuel’s therapist also believed him. The therapist based her conclusion that Samuel was believable on her years of experience and knowing and observing him . . . The therapist further noted the lack of motive for Samuel to lie. Samuel had historically been protective of the Appellant and tended to minimize concerns around the Appellant’s treatment of him. Thus it would be inconsistent with Samuel’s pattern of behavior to fabricate a story of abuse by the Appellant. The Appellant offered nothing to contradict the therapist’s professional opin *383 ion that Samuel had the ability to tell the truth, and that his disclosure to his therapist was credible.
Samuel’s mother also believed him when he told her about being hit by the Appellant. [Citing to the §51A and §5IB reports.] . . .
I find that her [Mrs. Ralowicz’s] motivation to gain control over the visits [between Samuel and his father] was sound, and that it does not outweigh Samuel’s credibility, as evidenced by his clear and consistent disclosures of the abuse.
R. 10.
DISCUSSION
1. Standard of review. The standard of review in cases such as this is set forth in G.L.c. 30A, §14(7), and limited to a consideration of whether the determination by the Hearing Officer was based on an error of law or whether it is supported .by “substantial evidence." The so-called “substantial evidence” test calls on the court to determine from a consideration of all of the entire record whether a reasonable mind would find the evidence adequate to support the agency’s decision. G.L.c. 30A, §1(6). See Labor Relations Commission v. University Hospital, 359 Mass. 516, 520-21 (1971). In conducting this review, the court is not permitted to substitute its own judgment for that of the agency, see South Worcester County Regional Vocational Sch. Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420 (1982), and due weight must be given to the experience, technical competence, specialized knowledge, and discretionary authority of the agency. G.L.c. 30A, §14(7). “The approach is one of judicial deference and restraint, but not abdication.” Arnone v. Commissioner of Dept. of Social Services, 43 Mass.App.Ct. 33, 34 (1997).
2. The sufficiency of the evidence. In Cobble v. Commissioner of the Department of Social Services, 430 Mass. 385 (1999), the Supreme Judicial Court considered the sufficiency of the evidence of physical abuse presented by the department at a fair hearing in the context of an analogous set of facts. In Cobble, the court faced a determination by the Department of Social Services that a father had abused his nine-year-old son by using a belt to spank him as a disciplinary measure five or six times during a seven-month period. In Cobble, the court noted that the hearing officer heard evidence that the spankings had occurred (the father admitted that he struck his son with a belt), that each use of the belt resulted in contact with the child’s body (the father demonstrated the spanking action by hitting a sofa cushion at the hearing which resulted in what the hearing officer described as a “solid smack”), and that the spankings left the child with temporary pink or red marks on his buttocks (the child testified and was corroborated by testimony from his mother). In addition, the hearing officer received evidence in the form of opinion testimony from the child’s pediatrician who explained that the child suffered from a congenital muscle disease, needed to undergo regular physical therapy, and would not be helped by spankings (although he did not observe any evidence of bruising or other signs of physical abuse). Finally, there was testimony at the hearing from the child’s pediatric orthopedist who had never seen any bruising or other marks on the child’s body and who reported that both parents were extremely devoted to the child.
Based on this evidence, the hearing officer in Cobble followed the reasoning of the DSS investigator who had supported the mandated reporter’s report of abuse by determining that the father’s use of the belt to discipline his son put him at risk of physical harm. Cobble, supra, at 388. The hearing officer noted that because the child tended to embellish the facts, the existence of any marks on the boy’s body was only “possible,” and it was “unclear” whether spankings increased the risk of physical harm due to the child’s medical problems. Id. at 389. Nonetheless, the hearing officer reasoned that while there was no finding that the child had suffered any bruising or swelling as a result of the punishment, hitting a child with a belt puts the child at substantial risk of serious physical injury such as skin bruising or soft tissue injury. Id. at 389-90.
The statutory and regulatory definition of “abuse,” see G.L.c. 119, §51A and 110 C.M.R. §2.00, is “the non-accidental commission of any act by a caretaker upon a child under age 18 which causes, or creates a substantial risk of physical or emotional injury ...” “Physical injury,” in turn, is defined in the same regulation as “(a) death; or (b) fracture of a bone, a subdural hematoma, burns, impairment of any organ, and any other such nontrivial injury; or (c) soft tissue swelling or skin bruising depending on suchfactors as the child’s age, circumstances under which the injury occurred, and the number and location of bruises . . .” 110 C.M.R. §2.00 (emphasis added). In Cobble, the Supreme Judicial Court explained that in the absence of any evidence that anyone else observed physical injuries or marks on the child, the child’s own statements that the spankings left temporary red marks on his body that would fade after ten minutes was not substantial evidence of abuse. Cobble, supra, 430 Mass. at 392.[3]
A review of the evidence before the hearing officer in the present case indicates that there was no evidence presented to indicate that the child suffered “physical injury” as defined by 110 C.M.R. §2.00. Thus, in the present case, the Hearing Officer was in error in her view that “the case hinges on whether the child should be believed.” R. 9.
In Cobble, supra, the Supreme Judicial Court also considered the Hearing Officer’s conclusion that the factual record established that there was a substantial risk of physical injury. See 110 C.M.R. §2.00 (abuse consists of non-accidental acts that constitute physical injury or which create a substantial risk of physical injury). The court noted that no actual physical inju *384 ries were observed by anyone even though the child had been routinely examined by his physician every three or four months since birth, and concluded that even if the child’s account was accepted as true, the effects of the spankings (“temporary red or pink marks on his buttocks that would fade after ten minutes or so”) did not justify a conclusion that the child was at risk of suffering abuse as defined by law. Cobble, supra, 430 Mass, at 392. In the present case, there is even less evidence than was presented in Cobble. There was evidence that the child was slapped in the face on one occasion and slapped on the head on another occasion (in each case by means of an open hand) in 1997. T. 13; R. 6, para. 9. Although the child’s mother reported that Samuel complained often of abuse, there was no evidence from the child to that effect and no other objective evidence to corroborate such a report. Even if we assume that the father in the Cobble case was acting for disciplinary reasons in a manner that he perceived was in the best interests of the child and that the plaintiff in the present case was acting out of anger or frustration, the determination of whether a child is at “substantial risk of physical . . . injuiy,” 110 C.M.R. §2.00, does not turn on the subjective intent of the caretaker who strikes the child. With respect to allegations of abuse by means of a physical injuiy, it is the nature and consequences of caretaker's conductand not the caretaker’s intentthat is determinative. In the present case, even if the child’s statements are credited, the evidence is not sufficient to conclude that there was a substantial risk of harm to the child.
Finally, in Cobble, the court rejected the department’s contention that a consideration of the totality of the circumstances (in addition to the child’s statements, the force and regularity of the spankings, the child’s medical condition, the opinion of his pediatrician, the father’s neglect to check for bruising, and the lack of any evidence that the father would discontinue the spankings) provides a basis for the decision to support the §51A report. Cobble, supra at 392-94. In short, the Court observed that where “there is no substantiated claim of actual physical injury, a finding of abuse must be predicated on there being reasonable cause to believe that there is a substantial risk that such injury will occur; i.e., there must be a ‘collection of facts, knowledge, or observations which tend to support or are consistent with the allegations’ that a substantial risk of injury is present.” Cobble, supra, 430 Mass. at 394, quoting 110 C.M.R. §4.32. It makes no difference that the child made a consistent report of being slapped by his father to the mother and to the therapist because it did not include a report of a “physical injury” as defined by the regulations. Once again, in the present case, the Hearing Officer was in error in her view that the child’s “clear and consistent disclosures of the abuse” bolstered his credibilify. R. 10. See Edward E. v. Department of Social Services, 42 Mass.App.Ct. 478, 486 (1997) (statements by a child who consistently reports acts of abuse to others, without circumstantial indicia of reliability, do not thereby become trustworthy).
3. Other errors of law. Apart from a consideration of the sufficiency of the evidence of abuse based on the statements made by the child to the investigator, the mother, and the therapist, a disturbing aspect of this case is the admission of and the reliance placed on the investigator’s opinion, the mother’s opinion, and the therapist’s opinion that the child was telling the truth. Although such evidence apparently was not the subject of an objection at the fair hearing, it is not simply a matter of hearsay evidence being admitted for its probative worth in the absence of an objection. See, e.g., Commonwealth v. Keevan, 400 Mass. 557, 562 (1991). Apart from whether there is an objection and regardless of whether the formal rules of evidence are applied, a witness testifying in an administrative proceeding should not be permitted to express an opinion about the credibility of another witness. See Care and Protection of Rebecca, 419 Mass. 67, 83 (1994); Commonwealth v. Reed, 417 Mass. 558, (1994); Commonwealth v. Johnson, 412 Mass. 318, 327-28 (1992); Commonwealth v. Dickinson, 394 Mass. 702, 704 (1985); Commonwealth v. Rather, 37 Mass.App.Ct. 140, 147-48 (1994); Commonwealth v. Long, 17 Mass.App.Ct. 707, 708 (1984); Commonwealth v. Ward, 15 Mass.App.Ct. 400, 401-02 (1983). See also P.J. Liacos, M.S. Brodin, M. Avery, Handbook of Massachusetts Evidence §7.3.2 & 7.8.4(c) (7th ed. 1999 & Sup. 2001). Such evidence should not be admitted because it has no probative value. Moreover, the admission of such evidence interferes with the responsibility of the fact finder to assess credibilify, and may unduly and improperly influence the fact finder. See Commonwealth v. Colin C., 419 Mass. 54, 59-61 (1994); Commonwealth v. Powers, 36 Mass.App.Ct. 65, 69 (1994). The admission of such evidence violates a “fundamental principle in this Commonwealth that no witness, expert or otherwise, may offer an opinion, or comment even indirectly, on another witness’s credibility, even that of a child who alleges sexual [or physical] abuse.” Commonwealth v. Pare, 43 Mass.App.Ct. 566, 581 n. 24 (1997), affirmed, 427 Mass. 427, 433 (1998).
The reasoning of the Hearing Officer in this case is replete with references to direct and hearsay expressions of opinion about the credibility of a witness who never even appeared to testify. For example, she relies on the investigator’s experience working with DSS for twenty years in making credibilify determinations. “The investigator felt ‘completely assured of the child’s truthfulness’ when he disclosed the abuse to her.” R. 9. The error was compounded by her next statement that “[t]he Appellant offered no evidence to contradict the investigator’s determination of Samuel’s credibility.” R. 9. To require a party to offer evidence to contradict the opinion of another witness that the victim is being truthful moves the focus of the hearing *385 even further afield from the central question of whether the child suffered a physical injury. The Hearing Officer also relied on totem pole hearsay in the form of the therapist’s opinion that the child was truthful. “Samuel’s therapist also believed him ... The Appellant offered nothing to contradict the therapist’s professional opinion that Samuel had the ability to tell the truth, and that his disclosure to the therapist was credible.” R. 9. Finally, she relied on evidence that “Samuel’s mother also believed him when he told her about being hit by the Appellant.” R. 10.
It is the policy of the Department of Social Services that persons who appeal its decision to support an allegation of abuse are entitled “to receive a just and fair decision from an impartial hearing officer based on the facts and applicable regulations.” 110 C.M.R. §10.01. "The Hearing Officer shall have a duty to conduct a fair hearing so as to ensure that the rights of all parties are protected and to render an impartial decision based upon the issues and evidence presented at the hearing and in accordance with the law.” 110 C.M.R. §10.20. Although the Hearing Officer in this case correctly observed that she was not required to strictly follow the rules of evidence, she overlooked the requirement that “(o)nly evidence which is relevant and material maybe admitted and may form the basis of the decision.” 110 C.M.R. §10.21(1). The opinion of a lay or expert witness that another witness is credible or truthful is not “relevant and material” because it does not “throw light” on an issue in the case. See Adoption of Carla, 416 Mass. 510, 513 (1993). A hearing conducted to afford a person an opportunity to contest a finding that he or she has abused a child in their care can hardly be deemed a “fair hearing” if the result is made to rest in whole or in part on the opinions of other witnesses about the credibility of the child.
4. Conclusion. In Cobble, supra, the Supreme Judicial Court was careful to point out that its holding was limited to a determination that the father’s physical discipline of his minor child did not meet the department’s definition of physical injuiy and abuse, but that “corporal punishment similar to the plaintiffs could, in different circumstances, rise to a level of severity that would result in the actual infliction of impermissible injuries or, alternatively, warrant a rational inference that it posed a substantial risk that such injuries would result.” Id. at 395. Likewise, any time a caretaker slaps or hits a child, whether for disciplinary reasons or otherwise, a physical injury could occur that constitutes abuse or a substantial risk of abuse as defined by the department’s regulations may result. And, such conduct could give rise to a criminal prosecution. The point in this case is simply that the record does not contain evidence of a physical injury, and thus even under the deferential standard of judicial review established by G.L.c. 30A, §14(7), the department’s decision does not pass muster. See also Arnone v. Commissioner of Dept. of Social Services, 43 Mass.App.Ct. 33 (1997). Moreover, this case illustrates the important distinction between admissible and reliable hearsay evidence, and inadmissible testimony in the form of vouching for a witness. Hearing Officers should be vigilant to exclude the latter even in the absence of an objection.
ORDER
For the foregoing reasons, the plaintiffs motion for judgment on the pleadings is ALLOWED and the decision of the Department of Social Services to support the report of abuse is VACATED. The department is further ordered to notify any person, public or private, to whom DSS conveyed information of its decision that the report of physical abuse has not been supported.

 The facts are taken from the decision of the hearing officer based on the second fair hearing that was conducted on March 21, 2000, Record After Remand at 4-11 (“R.”) and the transcript of that hearing (“T.”).

 Although plaintiff asserts he was denied the right to cross examine, plaintiff did not timely object to this decision, did not appeal the decision, and did not request the hearing to be rescheduled until after Ms. Ralowicz gave birth.

 This view may represent an application of the principle commonly applied in cases prior to the adoption of the state Administrative Procedure Act in 1954 that evidence before an administrative agency that consists exclusively of hearsay does not meet the requirements of the “substantial evidence” test. See Sinclair v. Director of the Div. of Employment Sec., 331 Mass. 101, 103 (1954). In numerous cases since the adoption of the 1954 act, the validity of this principle has been left open. See, e.g., Arnone v. Comm’r of the Dept. of Social Services, 43 Mass.App.Ct. 33, 36-37 (1997). In any case, the Cobble decision establishes that in the context of an allegation before the Department of Social Services that a caretaker abused a child, if the hearsay statement of the child is the only evidence of “physical injuiy,” it does not meet the substantial evidence test under G.L.c. 30A, §14(7).