2001 ME 76

**STATE of Maine**

v.

**Erlon RICKER.**

Supreme Judicial Court of Maine.

Argued April 10, 2001.
Decided May 9, 2001.

David W. Crook, District Attorney, Alan P. Kelley, Deputy Dist. Atty. (orally), Augusta, for State.

Leonard I. Sharon (orally), Sharon, Leary & DeTroy, Auburn, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Erlon Ricker appeals from the judgment entered in the Superior Court (Kennebec County, *Marden, J.*) following a jury verdict finding him guilty of three counts of unlawful sexual contact (Class C), 17–A M.R.S.A. § 255 (Supp.2000), and three counts of gross sexual assault (Class A), 17–A M.R.S.A. § 253 (Supp.2000). Ricker argues that the court erred in excluding certain character evidence and in admitting prior consistent statements of the victim. Ricker also appeals his sentence contending that the court improperly considered hearsay and gossip contained in the presentence report. We affirm the conviction and the sentence.

## I. BACKGROUND

[¶ 2] Ricker was indicted for unlawful sexual contact and gross sexual assault on his niece.[1] The offenses occurred when the niece was six to eight years old and Ricker was sixty-three to sixty-five years old.[2] At that time the niece lived with her

father next door to Ricker and his wife. At trial the niece was eleven years old, and she testified in detail about the sexual abuse inflicted upon her by Ricker. The niece was six years old when she first reported the sexual abuse to her mother while visiting her in New Jersey. Although the sexual abuse was reported to the Department of Human Services (DHS) and to the niece's father, Ricker's abuse of the niece continued until she moved to live with another relative when she was eight years old. Following a three-day trial, the jury found Ricker guilty on all charges: three counts of unlawful sexual contact and three counts of gross sexual assault.

## II. EVIDENCE

### A. Reputation

[¶ 3] Rule 608(a) of the Maine Rules of Evidence allows a party to attack the credibility of a witness through evidence of the witness' reputation for truthfulness or untruthfulness. We review the exclusion of reputation evidence for abuse of discretion. *State v. Mazerolle*, 614 A.2d 68, 73 (Me.1992). Ricker contends that the trial court erred in refusing to allow three witnesses to testify about the niece's reputation for untruthfulness. The court heard the testimony of two witnesses outside the presence of the jury, and an offer of proof regarding the testimony of a third witness. The court ruled that the three witnesses would not be permitted to testify to the jury regarding the niece's reputation.

[¶ 4] The first proposed reputation witness was the niece's father. He testified

---

1. The victim is the daughter of Ricker's wife's brother.

2. Counts I and II allege gross sexual assault and unlawful sexual contact during the year the niece was eight years old, commencing with her eighth birthday. Counts III and IV

allege gross sexual assault and unlawful sexual contact during the time the niece was seven years old. Counts V and VI likewise allege the two offenses during the year the niece was six years old, commencing on her sixth birthday in early 1995.

that three or four years previously he had spoken to a school teacher who told him of instances when his daughter made up stories. Although he testified that he had spoken with school counselors about his daughter, this testimony amounted to nothing because he could not remember what they told him. The father also spoke with a woman who worked at a crisis center who told him about occasions when the daughter was less than truthful. The father spoke with several family members about his daughter's truthfulness, and they told him that she made up stories at times.

[¶ 5] The second witness was the father's sister who said that the consensus of family members was that the niece tells lies and stories and that she has a reputation of being a "story maker." The family members to which the witness referred consisted primarily of the witness' immediate family: her husband, mother, daughter, granddaughter, brother and his wife, and sister and her husband. The third witness was the father's brother, and the offer of his testimony demonstrated that it would be substantially the same as the testimony of the second witness.

[¶ 6] To be admissible, the evidence concerning a witness' reputation for truthfulness "must embody the collective judgment of the community and be derived from a group whose size constitutes an indicium of inherent reliability." *Mazerolle*, 614 A.2d at 73 (quotation marks and citations omitted). Evidence of reputation is considered reliable only if the community holding the opinion of reputation is sufficiently large. *Id.* If the group is too insular, its opinion of the witness' reputation for truthfulness may not be reliable because it may have been formed with the same set of biases. *State v. Cyr*, 2001 ME 35, ¶ 6, 767 A.2d 307, 310.

[¶ 7] While it may be that a child's community is smaller than an adult's community, the child's community must be sufficiently numerous for the opinion of reputation to be reliable, and the members of that community must have had sufficient contacts with the child to justify an opinion of reputation. *See Commonwealth v. Philippa P.*, 2001 WL 64650, at *4, 50 Mass.App.Ct. 1113, 741 N.E.2d 491 (2001). Here, the only evidence consists of a reputation for untruthfulness among family members. The father's testimony about the opinions of a teacher and a crisis center worker must be discounted because the testimony was not about the niece's *reputation*, but consisted of the statements of these two people about specific occasions when the niece had not been truthful. Thus, the only evidence of the *reputation* of the niece is her reputation among certain members of the father's family.

[¶ 8] The burden is on the proponent of reputation evidence to satisfy the foundational requirements of such evidence including the requirement that the community be sufficiently large and diverse to give the reputation evidence the reliability required for admissibility. In this case there was evidence that the niece was known by a fairly large community. She was eleven years old at the time of trial; she had lived with several different relatives; and she had attended at least two different schools. Given the evidence that the niece's community consisted of more than a segment of her father's family, it was not an abuse of discretion for the court to have concluded that the requisite foundation of community had not been established.

B. Prior Consistent Statement

[¶ 9] The other evidentiary issue raised by Ricker is his contention that the trial court erred in allowing testimony of the niece, a police officer, and a DHS employee regarding prior consistent out-of-court statements of the niece. The pri-

or consistent statements at issue are the niece's reports to others that Ricker had abused her. No objections were made at trial to any prior consistent statement, and, therefore, we review for obvious error.

[¶ 10] Prior consistent out-of-court statements by a witness who testifies at trial, such as the niece in this case, are admissible for the truth contained in the statement when the statement rebuts a claim of recent fabrication or improper influence or motive. M.R. Evid. 801(d)(1). All other out-of-court statements by a witness which are consistent with her in-court testimony are hearsay, and unless they come within an exception to the hearsay rule, are inadmissible to prove the truth contained in the statement. However, such other consistent out-of-court statements may be admissible for purposes other than for the truth asserted in the statement.

[¶ 11] One hearsay exception that allows the report of sexual abuse to be admitted substantively is the "first complaint" exception. *See State v. Palmer,* 624 A.2d 469, 471 (Me.1993). This exception is "very narrow and allows only the bare fact of the complaint to be admitted . . . ." *State v. Joel H.,* 2000 ME 139, ¶ 23, 755 A.2d 520, 526. In the first instance of which Ricker complains, the niece was asked on direct examination: "What you've told us here today, is that the first time you told anybody about what happened?" She responded: "No." In response to additional questions she said that she told many people but told her mom first, told her "everything," and she was six years old when she first told. These responses may arguably exceed the "first complaint" exception because the niece said she told her mom "everything." If the admissibility of these responses was error, it was not obvious error affecting a substantial right of Ricker. The defense strategy appears to have been based on the fact that the niece reported the sexual abuse when she was six years old, that Ricker was notified of the report, and that he did not have access to the niece after that report. Thus, this report of abuse was not a fact that Ricker wanted kept from the jury, and his testimony contains several references to this report.

[¶ 12] We have reviewed the context in which the statements of the police officer and DHS worker, about which Ricker now complains, were made, and we conclude that the statements were admissible. In these instances the testimony regarding the niece's report of sexual abuse was not offered for the truth of what was contained in the report; rather it was offered only to place the questions and testimony in context. The police officer testified that he interviewed Ricker about the niece's report and told Ricker that the niece had given details about touching and licking her vagina, attempting sexual intercourse, and masturbating in her presence. The police officer testified to Ricker's reaction to these allegations. Ricker's responses to the allegations would not make sense without the context in which his responses were made. The DHS worker, in response to a question as to what role she played for the family of the niece, testified that "based on the allegations that [the niece] had been abused by an uncle, it was my job to find out if the father was able to keep [the niece] from having unsupervised contact with the uncle." The testimony of the police officer and the DHS worker demonstrates that their references to the niece's report of sexual abuse were only to give context to their testimony and were not offered for the truth of the allegations in the report.

### III. SENTENCE

[¶ 13] Following the verdict of guilty, the court ordered the probation officer to pre-

pare a pre-sentence report. *See* M.R.Crim. P. 32(c). The court also ordered the State Forensic Service to perform a forensic evaluation. *See* 34–B M.R.S.A. § 1212(2)(D) (Pamph.2000). After both the forensic evaluation and the pre-sentence report were filed with the court and copies furnished to Ricker's attorney, the court held the sentencing hearing.

[¶ 14] On the first count of gross sexual assault, Ricker was sentenced to twelve years imprisonment with all but three years suspended and six years of probation. On the second count of gross sexual assault he was sentenced to three years imprisonment, all suspended, with six years of probation, consecutive to the first count. The sentence of three years imprisonment on the third count of gross sexual assault was suspended, and no probation was imposed. On the three counts of unlawful sexual contact, the court imposed sentences of one year imprisonment, concurrent with the sentence on the first count of gross sexual assault. The cumulative effect of the sentences is fifteen years imprisonment with all but three years suspended and a total of twelve years of probation. In addition, the court imposed various conditions of probation and mandatory financial surcharges.

[¶ 15] Ricker applied to the Sentence Review Panel of this Court for a review of his sentence. *See* 15 M.R.S.A. §§ 2151–2157 (Supp.2000); M.R.Crim. P. 40. He alleged that the sentencing court erred in determining steps one and three of the *Hewey* analysis, that is, the basic sentence and the amount of the sentence to be suspended. *See State v. Hewey*, 622 A.2d 1151 (Me.1993); 17–A M.R.S.A. § 1252–C(1), (3) (Supp.2000). The Sentence Review Panel denied leave to appeal from the sentence. Ricker now claims that his sentence was illegal and imposed in an illegal manner because the court considered im-

proper hearsay and gossip contained in the pre-sentence report.

[¶ 16] At the sentencing hearing Ricker specifically objected to the portion of the pre-sentence report entitled "Local Observations" in which statements from three people were included. The first statement was from a woman who recalled that her father, a former deputy sheriff now deceased, told her in the early 1980s to stay away from Ricker. She had the impression that this was because of some sexual impropriety. The second statement was from a woman who was a seventh grade student in the late 1950s when Ricker was a school bus driver. She reported that it was common knowledge that one of the older girls was having an affair with Ricker. The third statement was from a man who had ridden the school bus as a student when Ricker was the driver, and he recalled that Ricker routinely stopped the bus at the home of one of the girls and accompanied her into her home for a few minutes to get a pail of water for the bus.

[¶ 17] The sentencing court refused to strike the "Local Observations" portion of the pre-sentence report, but it noted that the statements were triple or quadruple hearsay and stated that it "would afford them very little weight." Ricker claims that the inclusion of the "Local Observations" in the report and the refusal of the court to strike them violates Ricker's due process rights because the information was not reliable. Ricker acknowledges that hearsay may be received by a sentencing court, but he contends that the hearsay may only be considered when it is reliable.

[¶ 18] We first determine whether Ricker may appeal his sentence as a matter of right, pursuant to 15 M.R.S.A. § 2115 (Supp.2000), or whether he is limited to a discretionary review, pursuant to 15 M.R.S.A. § 2151. We permit an appeal from a sentence as a matter of right whenever the appellant claims that his sentence

was illegal or imposed in an illegal manner. This is in contrast to a claim by a defendant that the sentence is excessive or inappropriate. We have said that the appropriateness of a sentence is a matter of discretionary review, *State v. Goodale,* 571 A.2d 228, 229 (Me.1990), but that an illegality of a sentence may be raised in a direct appeal as a matter of right so long as the illegality appears plainly in the record, *State v. Parker,* 372 A.2d 570, 572 (Me.1977). If the illegality does not appear plainly in the record, the defendant is left to a collateral attack on his sentence. *State v. Tellier,* 580 A.2d 1333, 1333 n. 1 (Me.1990).

[¶ 19] Ricker claims that his due process rights were violated because the court utilized unreliable information in fashioning his sentence. When a sentence is imposed on the basis of unreliable information, the Due Process Clause is implicated. *State v. Dumont,* 507 A.2d 164, 165–66 (Me.1986). Ricker's contention that his sentence was imposed with the use of unreliable information is a challenge to the legality of the sentence from which he may appeal as of right. Furthermore, he may raise the issue directly, as opposed to collaterally, because his claim is that the challenged portion of the pre-sentence report, on its face, is unreliable.

[¶ 20] Our review of the sentencing transcript plainly reveals that the court made no use of the "Local Observations." When the court gave its reasons for imposing the sentences, it made no mention of any information contained in this portion of the pre-sentence report. Instead, the court properly reviewed the circumstances of the offenses and the manner in which the sexual assaults and contact were committed. The court detailed the culpability of Ricker, noting the fact that Ricker was informed, when the niece was six years old, that she had accused him of sexual molestation, but he continued to have frequent contact with her because he believed that her family and the authorities did not find her credible. The court also described Ricker's age and health. It is readily apparent from the court's articulation of its concerns regarding the sentence that the "Local Observations" portion of the pre-sentence report did not influence the court. Because the court recognized that this information was unreliable, terming it "rumor" and "triple or quadruple hearsay," and made no use of it in forming the sentence, the sentence was not based upon unreliable information, and the due process rights of the defendant were not violated.

The entry is:

Judgment affirmed.