2002 ME 148

### In re RACHEL J. et al.

Supreme Judicial Court of Maine.

Submitted On Briefs: July 22, 2002.
Decided: Aug. 28, 2002.

Andrea J. Ubl, Sherman & Sandy, Waterville, for appellants.

G. Steven Rowe, Attorney General, Matthew Pollack, Asst. Attorney General, Debra Gotlib, Asst. Attorney General, Augusta, for appellee.

Laurel Robbins, CASA, West Bath, Guardian ad Litem.

Ferdinand Slater, Ellsworth, for mother.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] The father of Rachel J. and Frank J. appeals from a jeopardy determination entered in the District Court (Ellsworth, *Staples, J.*), contending that the court erred in refusing to admit proffered reputation evidence, in admitting evidence of his prior sexual abuse of other family members, and in finding that his children were in jeopardy because he posed a threat of sexual abuse. Because we conclude that the court's error in refusing to admit the reputation testimony was harmless, and because we find no other error, we affirm.

## I.  BACKGROUND

[¶ 2] The following facts are undisputed. The father and the mother of the children were divorced in August 2000. The divorce judgment placed the children, Rachel and Frank, with the father. Beginning in August 2000, K.B., a sixteen-year-old girl who was several months pregnant, lived with the father and the two children in a house owned by the father's mother. K.B. left the house in October 2000 and moved in briefly with her father before being placed in a foster home.

[¶ 3] In October 2001, the Department of Human Services (DHS) filed a petition for a child protection order for Rachel and Frank, alleging that the children faced a threat of sexual abuse by the father. The petition alleges that the father "sexually abused an adolescent girl who was temporarily residing in his residence," and that the father's relatives have expressed concerns about his inappropriate behavior with other minor children.

[¶ 4] The court held a jeopardy hearing at which most of the material facts were disputed. K.B. testified that she had sex with the father many times while she lived with him. The father's sister testified that Frank called her and said he saw his father and a house guest taking turns having sex with K.B. K.B.'s foster mother also testified that K.B. reported that she had sex with the father and that she was scared for Rachel.

[¶ 5] The father's nephew and two of his nieces testified that he sexually abused them when they were children and he was a teenager. They testified about multiple incidents, including making one niece rub against his genitals; making the other niece perform and receive oral sex and forcing intercourse on her; and sodomizing the nephew and making him perform and receive oral sex. The father raised a relevance objection to one niece's testimony, but the court overruled it.

[¶ 6] The father denied that he had sex with K.B. He also denied that he molested members of his family. He testified that

he caught K.B. having sex with other men while she was living with him.

[¶ 7] The father's mother testified that she had seen another man visit K.B. She also testified that she never heard the father come upstairs to K.B. and Rachel's room at night.

[¶ 8] During his examination of Rachel, the father attempted to establish a foundation for evidence of K.B.'s reputation in the community for truthfulness:

Q ... [D]o you know members of [K.B.'s] family?

A Yes.

Q ... [H]ow do you know members of her family?

A When I was younger, I knew this guy named Ernie. And he got involved with this—her mother. Her name was Jennifer or something like that. And I met her that way.

. . .

Q ... [H]ave you had occasion to talk with members of her family?

A Yes.

Q ... [D]o you have school mates who have brothers and sisters and parents?

A Yes.

Q ... [H]ave you ever had occasion to listen to them, or have conversations with them, and do any of them know K.B.?

A Yes.

Q ... [G]enerally speaking, outside of the school, do you have friends in the community generally?

A Yeah.

Q ... Do you know whether any of them—have you ever, on occasion, heard them or discussed with them K.B.?

A Yes.

Q ... [B]ased upon the people in her family, your school friends and school mates and their families, and these other people outside of the school, in that general community, have you determined ... that K.B. has a reputation, among those separate groups, for truthfulness or untruthfulness?

A Yes.

DHS objected and conducted voir dire, after which the court asked some additional questions:

COURT: When did you have these discussions with people? Was this before she lived with you or after?

WITNESS: This is while she was living with me, because I was kind of curious, because I didn't know a lot about her. And I wanted to know—I was like, "Do you know K.B[.], because she's living with us." And she—they would be like, "Yeah," and then they would tell me stuff.

. . .

COURT: ... What people did you talk to?

WITNESS: I talked to my—at the time, my Dad's girlfriend's daughter. She's the same age as her.

COURT: Okay.

WITNESS: And I just told her that. And then I've talked to some of my friends who know her, that go on her bus, or used to go to—their older brothers and sisters used to go to school with her.

. . .

COURT: Anybody else?

WITNESS: Oh, I talked to my aunt, and she lives next door to me.

. . .

WITNESS: And she was the health teacher at the high school. And she told me some stuff about her, too.

The court sustained the State's objection to the reputation testimony, stating, "I don't believe that the source of her information represents the collective community." The father's attorney continued his examination:

Q Other than her family, your family and the school community, that's basically your world, is that correct? That covers most of the people you know?

[DHS Attorney]: I'm going to object. I think the Court's already ruled.

COURT: What are the purpose of these questions . . . ?

[Father's Attorney]: I'm trying to lay a foundation to make this evidence admissible. You've ruled that the community is not broad enough. I'm trying to find out whether or not she has a broader community.

COURT: She's answered the Court's questions in that respect . . . and I have sustained the objection. Please don't pursue it any further.

The court entered a jeopardy order removing the children from the father's home and placing them with their mother. The father timely appealed.

1. Maine Rule of Evidence 404(a) provides:
   (a) **Character Evidence Generally**. Evidence of a person's character or a trait of character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:
   (1) Character of Accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same;
   (2) Character of Witness. Evidence of the character of a witness, as provided in Rules 607, 608, and 609.
   Rule 608(a), which the court applied in the present case, provides:

## II. DISCUSSION

### A. Reputation for Truthfulness

█ [¶ 9] The father contends that the court "erroneously disallow[ed] the [reputation] evidence based on hearsay." He contends that the testimony was admissible pursuant to M.R. Evid. 404(a) and 22 M.R.S.A. § 4007 (1992 & Supp.2001).[1]

[¶ 10] DHS contends that the court properly concluded that the father failed to establish an adequate foundation for the reputation evidence. If there was error, DHS contends that it was harmless.

█ [¶ 11] The Maine Rules of Evidence do not permit "character evidence in the form of the witness' own opinion." *State v. Kalex*, 2002 ME 26, ¶ 16, 789 A.2d 1286, 1290 (quoting *State v. Cyr*, 2001 ME 35, ¶ 8, 767 A.2d 307, 310). Reputation evidence "must embody the collective judgment of the community and must be derived from a group whose size constitutes an indicium of inherent reliability." *Id.* ¶ 17, 789 A.2d at 1291 (quoting *State v. Ricker*, 2001 ME 76, ¶ 6, 770 A.2d 1021, 1024) (internal quotation marks omitted). "The community in which the impeached party has the reputation for untruthfulness must be sufficiently large; [i]f the group is too insular, its opinion of the witness' reputation for truthfulness may not be reliable

(a) **Reputation Evidence of Character**. The credibility of a witness may be attacked or supported by evidence of reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise.
Section 4007 of Title 22 provides that "[a]ll child protection proceedings shall be conducted according to . . . the rules of evidence, except as provided otherwise in this chapter." 22 M.R.S.A. § 4007(1) (1992).

because it may have been formed with the same set of biases." *Id.* (internal quotation marks omitted).

**■** [¶ 12] We recognize that a child's community may be smaller than an adult's, but "the child's community must be sufficiently numerous for the opinion of reputation to be reliable, and the members of that community must have had sufficient contacts with the child to justify an opinion of reputation." *State v. Ricker*, 2001 ME 76, ¶ 7, 770 A.2d 1021, 1024. A community composed of a segment of a child's family on her father's side is inadequate. *Id.* ¶ 8, 770 A.2d at 1024. Similarly, a child's small community of two or three teachers does not constitute a community of sufficient breadth. *State v. Walker*, 506 A.2d 1143, 1149 (Me.1986).

> The burden is on the proponent of reputation evidence to satisfy the foundational requirements of such evidence including the requirement that the community be sufficiently large and diverse to give the reputation evidence the reliability required for admissibility. We review the exclusion of reputation evidence for an abuse of discretion.

*Kalex*, 2002 ME 26, ¶ 20, 789 A.2d at 1291 (quoting *Ricker*, 2001 ME 76, ¶ 8, 770 A.2d at 1024) (internal quotation marks omitted).

[¶ 13] Here, Rachel spoke about K.B.'s reputation for truthfulness with her family, with K.B.'s family, with school acquaintances and their families, and with other people in the community. The father attempted to admit even more evidence regarding Rachel's community, but the court prevented him. We conclude that court erred in refusing to admit Rachel's testimony about K.B.'s reputation for truthfulness.

**■** [¶ 14] We must, therefore, determine whether the error was harmless.

> [T]he State has the burden of persuading us that it is highly probable that the error did not prejudice the parents or contribute to the result in the case. The State's burden of persuasion is high. Any doubt will be resolved in favor of the parent.
>
> Thus, when an error has occurred in a termination of parental rights proceeding, and the party alleging the error has preserved his or her objection to the error, we review the entire record to determine whether the error prejudiced the parents in the presentation of their case or had the potential to affect the outcome of the case. In the absence of substantial certainty, that is, a determination that it is highly probable, that the error had no prejudicial effect and did not affect the outcome, we will vacate the judgment.

*In re Michelle W.*, 2001 ME 123, ¶ 12, 777 A.2d 283, 286 (quoting *In re Scott S.*, 2001 ME 114, ¶¶ 29–30, 775 A.2d 1144, 1153).

[¶ 15] The court's error was harmless because witnesses other than K.B. testified about the father's prior molestation and his behavior during K.B.'s stay at the house. Even excluding K.B.'s testimony and her statements to her foster mother, the court had evidence before it that established a threat of sexual abuse. Because it is highly probable that the error "had no prejudicial effect and did not affect the outcome," *id.*, we decline to vacate the court's finding of jeopardy.

**B. Evidence Of Prior Sexual Abuse**

**■** [¶ 16] The father contends that the court committed prejudicial error in admitting testimony about the father's sexual behavior when he was a minor. He contends that if the evidence was relevant, its prejudicial effect substantially outweighs its probative value. The father's brief does not cite any legal authority on this

issue. DHS contends that the evidence is relevant to establish a pattern of conduct, and that the court's examination of evidence is not limited in temporal scope.

[¶ 17] "We review a trial court's evidentiary rulings for clear error and an abuse of discretion." *In re Kayla S.*, 2001 ME 79, ¶ 9, 772 A.2d 858, 862. Although the father's brief does not raise it, Rule 404(b) specifically governs the admission of evidence of prior bad acts: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." M.R. Evid. 404(b). Excepted from Rule 404(b) is evidence offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *State v. Huntley*, 681 A.2d 10, 13 (Me.1996) (internal quotation marks omitted).

· [¶ 18] We have discussed the temporal scope of a court's evidentiary examination in child protective cases:

> [W]hile the inquiry concerning parental unfitness pursuant to sections 4055(1)(B)(2)(b)(i) and (ii), concerning the parents' inability or unwillingness to protect the children from jeopardy and to take responsibility for the children, is prospective, the evidence to be considered is retrospective.... There is nothing in the statute, and nothing in our past decisions, that limits the temporal scope of the court's examination of evidence to any particular period. We decline to impose such a limit.

*In re Nathaniel B.*, 1998 ME 99, ¶ 6, 710 A.2d 921, 922 (holding that the court was permitted to consider the parents' actions over the entire course of the child protec-

tion proceedings). *See also In re Alexander D.*, 1998 ME 207, ¶ 18, 716 A.2d 222, 228 (holding that the court properly weighed the mother's inability to protect her children and her prior poor participation in programs along with her recent improved participation).

[¶ 19] The nature of the proof required in the child protective context is different than in the criminal context; the court is assessing a risk, not determining whether the father committed a criminal act. Unlike a criminal complaint for sexual abuse, the child protective petition alleges a *threat* of sexual abuse of the children, not *actual* sexual abuse of the children. *See* 22 M.R.S.A. §§ 4002(6)(A), 4035(3) (1992) (directing courts to determine whether a child is "in circumstances of jeopardy to health or welfare," which includes a "threat of serious harm"). DHS's attempt to establish a threat of abuse thus does not run afoul of the rule that prohibits the submission of evidence "to show that a person *acted* in conformity therewith." M.R. Evid. 404(b) (emphasis added). Although this relevant evidence of prior abuse is adverse to the father, it is not unfairly prejudicial and, in any event, its probative value in this child protective proceeding outweighs any risk of unfair prejudice. *See* M.R. Evid. 403.[2]

## C. Finding Of Jeopardy

[¶ 20] Contrary to the father's contentions, there is competent evidence to support the court's finding of jeopardy, *see Hartwell v. Stanley*, 2002 ME 29, ¶ 10, 790 A.2d 607, 611 (we uphold a court's findings of fact unless no evidence supports them), and the court was not obligated to accept

---

2. Rule 403 of the Maine Rules of Evidence provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair preju-
> dice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

the father's testimony over the testimony of the other witnesses, *see Jenkins, Inc. v. Walsh Bros., Inc.,* 2001 ME 98, ¶ 22, 776 A.2d 1229, 1236–37 (stating that a factfinder may accept, reject, or combine testimony in any way).

The entry is:

Judgment affirmed

ALEXANDER, J., filed concurring opinion joined by SAUFLEY, C.J. and LEVY, J.

ALEXANDER, J., with whom SAUFLEY, C.J. and LEVY, J. join, concurring.

[¶ 21] I concur in the result, but I respectfully do not agree with the conclusion that the trial court erred in excluding the child's reputation testimony. The party offering reputation testimony has the burden of demonstrating to the court a proper foundation for the testimony indicating that the witness "is sufficiently acquainted with (1) the person whose character is under attack, (2) the community in which that person has lived, and (3) the circles in which that person has moved, so that the witness can speak with authority of the manner in which that person generally is regarded." 4 JACK B. WEINSTEIN & MARGA-RET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 608.14(2) (Joseph M. McLaughlin ed., 2d ed.2001). We have stated that a group on which reputation testimony is based must be sufficiently large because "[if] the group is *too insular, its opinion of* the witness' reputation for truthfulness may not be reliable because it may have been formed with the same set of biases." *State v. Kalex,* 2002 ME 26, ¶ 17, 789 A.2d 1286, 1291 (quoting *State v. Ricker,* 2001 ME 76, ¶ 6, 770 A.2d 1021, 1024).

[¶ 22] The trial court could have reasonably viewed school bus and school hallway gossip among children as reflecting the communal biases of such a "too insular" group. The trial court did not exceed the bounds of its discretion or otherwise err in determining that the foundational requirements for admissibility of the reputation testimony had not been met and in excluding that testimony. *See State v. Ricker,* 2001 ME 76, ¶¶ 3, 8, 770 A.2d 1021, 1023, 1024.