2009 ME 38

**STATE of Maine**

v.

**Rodney TUCKER.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 26, 2009.

Decided: April 14, 2009.

Neil L. Fishman, Esq., Yarmouth, for Rodney Tucker.

Stephanie Anderson, District Attorney, Julia Sheridan, Asst. Dist. Atty., Portland, for the State of Maine.

Panel: CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

ALEXANDER, J.

[¶ 1] Rodney Tucker appeals from a judgment of conviction of one count of gross sexual assault (Class A), 17–A M.R.S. § 253(1)(A) (2008), entered in the Superior Court (Cumberland County, *Cole, J.*) following a jury trial. Tucker argues that the court abused its discretion and denied him a fair trial when it excluded testimony from a witness who alleged that the victim, the prosecution's primary witness, had a reputation for untruthfulness and that exclusion of that evidence was not harmless error. We affirm the judgment.

## I. CASE HISTORY

[¶ 2] In July 2007, the victim was staying temporarily with her friend, Kristin, and Kristin's family in an apartment complex in Portland, having just moved there from her boyfriend's Chestnut Street apartment. The victim attended Portland High School and worked as a store manager.

[¶ 3] On the afternoon of July 10, 2007, the police were called to the apartment complex on a matter unrelated to this case. Rodney Tucker, who was also at the complex, but not at Kristin's apartment, assaulted one of the officers. The police arrested Tucker, then twenty years old, and told him and the gathered crowd, including the victim, that he should not return to that apartment complex.

[¶ 4] A few hours later, after it was dark, the victim was outside Kristin's apartment when Tucker reappeared. The victim knew Tucker from weekend parties at her boyfriend's apartment and from seeing him at the Preble Street Shelter and at the Teen Center. The victim considered Tucker a friend. The victim approached Tucker, and, noting that he was drunk, asked Kristin if Tucker could spend the night. Kristin said no, so the victim told Tucker she would walk him part of the way back to his house to help him avoid further trouble with the police.

[¶ 5] As they walked, Tucker told the victim that he knew a shortcut, which was a path through some woods. The victim walked in front of Tucker on the unlit path to prevent him from tripping. Tucker said the victim's name, she turned around, and he punched her in the right side of her face near her eyebrow and across her cheek to her ear. The punch ripped out a safety pin in a new piercing on the victim's ear. The victim lost consciousness and fell down. When the victim regained consciousness, her head was up against a tree and Tucker was crawling on top of her. The victim's pants and underwear had been pulled down and Tucker's pants were around his ankles. The victim told Tucker

to stop, but he held her down and sexually assaulted her.

[¶ 6]   During the assault, the victim was able to push Tucker off her and ran back to Kristin's apartment. Initially, the victim was crying so hard that Kristin had difficulty understanding what had happened. Kristin saw that the victim's glasses were bent and that she had a bruise on her eye, a cut on her ear, and her lip was bleeding. Kristin called the police. The police arrived, finding the victim hysterical and crying with a bloody nose and swollen right eye "like it had been hit." Several officers searched the path where the victim was sexually assaulted. They found no evidence of the crime, but an officer testified that the path was well beaten down and would not have left disturbed dirt or marks. Meanwhile, the victim was taken to the hospital where a nurse examined her and completed a sexual assault kit.

[¶ 7]   Tucker was indicted in August 2007 on one count of gross sexual assault (Class A), 17–A M.R.S. § 253(1)(A). A two-day jury trial was held in February 2008. In addition to offering the testimony of the victim, Kristin, the two officers who responded to the call, and the nurse who performed the victim's sexual assault kit, the State called a forensic chemist who had analyzed the contents of the kit. The chemist testified that swabs taken from the kit revealed no presence of sperm or prostate specific antigens.

[¶ 8]   After the State rested, Tucker sought to introduce reputation evidence through the testimony of one Jennifer Ramsdell, who was also known as "Devon." The court conducted a voir dire examination of Ramsdell to determine if Tucker could meet his burden, pursuant to M.R. Evid. 104(a), to establish a sufficient factual foundation to permit Ramsdell to testify as to the victim's reputation for untruthfulness in the community. Ramsdell testified

in voir dire that she has known Tucker for eight years. Ramsdell also knew the victim because the victim once dated her close friend and because Ramsdell lived at various times in two apartment buildings on Chestnut Street where the victim was "around," including staying occasionally at the victim's boyfriend's Chestnut Street apartment.

[¶ 9]   During voir dire, Ramsdell asserted on direct examination that she knew twenty to thirty people of diverse backgrounds at the Chestnut Street apartments who also knew the victim. Ramsdell stated that the victim's reputation for truthfulness within this apartment community was "not very good" and that she "knew for a fact that [the victim] lied to me to my face." Ramsdell ultimately agreed with defense counsel's leading question that the victim had a reputation for untruthfulness in the community.

[¶ 10]   On cross-examination, Ramsdell testified that "everybody around the area," "people on Munjoy Hill," a "bunch of people around town," "a lot of people down at the Teen Center," and "a good handful of people" hanging out at Tommy's Park thought the victim was a liar. When pressed to be more specific, however, Ramsdell stated that most of the people who thought the victim was a liar were those who knew the victim from hanging out "on a constant basis" at the Chestnut Street apartments. Ramsdell named eight young adults, other than herself, from the apartments, but her testimony suggests that six of them had stated that they believed the victim had lied on specific occasions rather than stated that they thought the victim had a reputation for untruthfulness.

[¶ 11]   Additionally, Ramsdell named one person from the Munjoy Hill area with whom she had spoken about the victim who had stated that the victim had cheated

on her boyfriend and believed the victim to have lied on a particular occasion. Likewise, Ramsdell conceded that teens at Tommy's Park actually exchanged stories of occasions when they thought the victim had lied rather than expressed a commonly-held belief that the victim was a liar. Finally, with respect to individuals at the Teen Center, Ramsdell stated that the conversations had to do with "word that was going around" concerning the victim and her boyfriend.

[¶ 12] The court decided to continue the voir dire to the following day to allow counsel to more fully explore the issues. The next morning, however, Tucker declined the opportunity to conduct additional voir dire. The court then ruled that Ramsdell's testimony would be excluded. The court found that, considering *State v. Kalex*, 2002 ME 26, 789 A.2d 1286, and based on "the issues presented in regard to this particular witness Jennifer Ramsdell, also known as Devon," Tucker had not met his burden to satisfy the foundational requirements to present the reputation evidence pursuant to M.R. Evid. 404(a)(2), 608(a). The court found that the community at issue was an insular group of young adults who socialized together and who shared the same narrow types of experiences with the victim. The court also found that Ramsdell's assertion that the community views the victim as untruthful was not actually based on a commonly-held view of the victim's reputation, but instead reflected the opinions of certain members of that community who believed the victim had lied in specific instances.

[¶ 13] The jury returned a guilty verdict on the single count. Tucker was sentenced to fifteen years' incarceration, all but seven and one-half years suspended, and four years' probation. Tucker appeals

the court's decision to exclude Ramsdell's testimony.

## II.  LEGAL ANALYSIS

### A.  Standard of Review

[¶ 14] Maine Rule of Evidence 104(a) provides, "Preliminary questions concerning ... the admissibility of evidence shall be determined by the court...." Thus, questions regarding the sufficiency of a foundation offered to support admissibility of evidence are preliminary questions for the court to decide.

[¶ 15] "We review the exclusion of reputation evidence for an abuse of discretion." *In re Rachel J.*, 2002 ME 148, ¶ 12, 804 A.2d 418, 423 (quotation marks omitted); *see also State v. Mills*, 2006 ME 134, ¶ 8, 910 A.2d 1053, 1056 (discretion in rulings on evidentiary issues is considered abused if the ruling arises from a failure to apply principles of law applicable to a situation resulting in prejudice). However, we review the court's underlying factual findings for clear error. *See Mills*, 2006 ME 134, ¶ 8, 910 A.2d at 1056. "A trial court commits 'clear error' on evidence questions when its findings regarding the foundation for admitting or excluding evidence are not supported by facts in the record." *Id.*

### B.  Reputation Evidence

[¶ 16] The credibility of a witness may be attacked by evidence of reputation for untruthfulness, *see* M.R. Evid. 608(a), but with several limitations. First, such evidence may refer only to a witness's character for truthfulness or untruthfulness. *See* M.R. Evid. 404(a)(2), 608(a). Second, evidence of a witness's reputation for untruthfulness may not be based on prior specific instances of conduct. *See* M.R. Evid. 608(b); *Kalex*, 2002 ME 26, ¶ 16, 789 A.2d at 1290. Therefore, testimony that consists of the opinions of indi-

viduals must be discounted when the testimony is not about the witness's reputation, but instead consists of the statements of individuals about specific occasions when they believed that the witness had not been truthful. *See State v. Ricker,* 2001 ME 76, ¶ 7, 770 A.2d 1021, 1024; *see also State v. Rossignol,* 490 A.2d 673, 674–75 (Me.1985). Finally, a witness's testimony reflecting her own opinion that another witness is not credible is not admissible, *see In re Rachel J.,* 2002 ME 148, ¶ 11, 804 A.2d at 422; *Inhabitants of Phillips v. Inhabitants of Kingfield,* 19 Me. 375, 379 (1841); nor may a person provide her opinion of what others think of the witness's reputation for truthfulness, *see State v. Walker,* 506 A.2d 1143, 1148–49 (Me.1986).

■■■ [¶ 17] To be admissible, reputation evidence "must embody the collective judgment of the community and must be derived from a group whose size constitutes an indicium of inherent reliability." *Kalex,* 2002 ME 26, ¶ 17, 789 A.2d at 1291 (quotation marks omitted). "The community in which the impeached party has the reputation for untruthfulness must be sufficiently large; if the group is too insular, its opinion of the witness'[s] reputation for truthfulness may not be reliable because it may have been formed with the same set of biases." *Id.* (quotation marks and alteration omitted). We have acknowledged that a child's community may be smaller than that of an adult, but the community nonetheless must be of sufficient size, and the members of the community must have had sufficient contact with the child, to provide the required reliability. *See Ricker,* 2001 ME 76, ¶ 7, 770 A.2d at 1024.

■■■ [¶ 18] The proponent of the reputation evidence bears the burden of satisfying the foundational requirements of the evidence, "including the requirement that the community be sufficiently large and diverse to give the reputation evidence the reliability required for admissibility." *In re Rachel J.,* 2002 ME 148, ¶ 12, 804 A.2d at 423 (quotation marks omitted).

■■■ [¶ 19] There is no bright line rule as to what constitutes a sufficiently large and diverse community for purposes of admitting reputation evidence. We have concluded in several cases that the community from which the witness's reputation for untruthfulness was derived was sufficiently large and diverse. We held in *Kalex* that, contrary to the trial court's ruling, the defendant's girlfriend should have been allowed to testify as to the State's primary witness's reputation for untruthfulness because her testimony was based on conversations she had had with "fifty people in the greater Biddeford area." *Kalex,* 2002 ME 26, ¶ 21, 789 A.2d at 1291. We stated that the fact that the proffered witness was the defendant's girlfriend went to the credibility and weight of her testimony, not its admissibility. *Id.* ¶ 21, 789 A.2d at 1291–92.

[¶ 20] Similarly, in *In re Rachel J.,* we held that the trial court abused its discretion when it refused to allow a child to testify as to the State's primary witness's reputation for untruthfulness, noting that the proffered testimony was based on the child's conversations about the witness's reputation with one or two members of the witness's family, the child's school friends and their family members, the child's aunt, and friends in the community. 2002 ME 148, ¶¶ 8, 13, 804 A.2d at 421–22, 423.[1]

[¶ 21] Conversely, we have held in other cases that the trial court did not abuse its discretion in excluding reputation testimony. In *State v. Mazerolle,* a person

---

1. Because of other evidence in the case, we concluded that the error in excluding the reputation testimony was harmless. *In re Rachel J.,* 2002 ME 148, ¶¶ 14–15, 804 A.2d 418, 423.

proffered testimony that six individuals living in a witness's town had told the person that the witness was "someone to stay away from" and that several others had told the person that the witness was "not really very honest, you've really got to watch out for him." 614 A.2d 68, 73 (Me. 1992) (quotation marks omitted). We could not conclude, based on the record, that the court had abused its discretion in excluding that reputation evidence. *Id.*

[¶ 22] In *State v. Kim,* the trial court excluded reputation evidence concerning a seventeen-year-old when the proffered testimony was derived from four individuals in the teenager's neighborhood who thought the teen tended to exaggerate and "tell stories." 2001 ME 99, ¶ 5, 773 A.2d 1051, 1054. We held that the trial court did not err in excluding the testimony, stating that the requisite foundation of community had not been established, particularly when the evidence showed that the teenager was known by a relatively large community. *Id.* Likewise, we held that a trial court did not err in excluding proffered reputation testimony when the testimony was based on the collective judgment of a "relatively small and discrete group of friends" and did not exhibit the inherent reliability "demanded of reputation testimony." *State v. Cyr,* 2001 ME 35, ¶ 9, 767 A.2d 307, 310; *see also Ricker,* 2001 ME 76, ¶¶ 7–8, 770 A.2d at 1024 (holding that the court did not abuse its discretion in excluding reputation testimony when the testimony was based on a community consisting of only certain family members given that the witness was known by a fairly large community); *Walker,* 506 A.2d at 1148–49 (holding that the court did not err in excluding reputation evidence based on a community of sixteen to twenty people in a bowling league when it appeared from the record that the proffered witness was only presenting his opinion of what the bowlers

thought and when the testimony lacked probative value given the proffered witness's self-interest in so testifying).

[¶ 23] In this case, the trial court found that Ramsdell's proffered testimony derived from an insular group of teenagers who socialized together and generally had a narrow set of experiences with the victim, and that Ramsdell's testimony primarily reflected the opinions of certain persons who thought the victim had lied on specific occasions. The court found, based on these preliminary factual findings, that Ramsdell's proffered testimony did not derive from a sufficiently large and diverse community.

[¶ 24] The court's factual findings are supported by substantial record evidence and are not clearly erroneous. Ramsdell testified at various points at the voir dire hearing that the victim had a reputation for untruthfulness among a group of twenty to thirty people in a two-apartment-building community on Chestnut Street; that she spoke with "everybody around the area"; "a bunch of people around town"; "a lot of people down at the Teen Center"; a "handful of people from Tommy's Park"; "people up on Munjoy Hill"; and that they thought the victim was a liar. When pressed, however, Ramsdell acknowledged that most of the people who had a view as to the victim's reputation for truthfulness were from the Chestnut Street apartments, and when asked to be more specific, Ramsdell could offer only eight people, in addition to herself, who thought the victim was generally untruthful. An eight-person community is not sufficient to form the foundation required to admit Ramsdell's reputation evidence. *See, e.g., Mazerolle,* 614 A.2d at 73.

[¶ 25] Furthermore, with additional probing, it appeared that Ramsdell's proffer concerning six of the eight identified

individuals, among others, was based primarily on Ramsdell's either speaking to, or hearing about, people who shared specific instances when they believed the victim had lied (or, irrelevantly, that the victim had cheated on her boyfriend) rather than based on a community-held belief that the victim was not a truthful person. Ramsdell's testimony also indicated that her proffer reflected her opinion of what those individuals thought. Regardless, the record supports the court's findings and decision to exclude Ramsdell's testimony. *See Ricker,* 2001 ME 76, ¶¶ 7–8, 770 A.2d at 1024; *Walker,* 506 A.2d at 1148–49.[2]

[¶ 26] In sum, the trial court's factual findings are not clearly erroneous, nor did the court abuse its discretion in excluding Ramsdell's testimony. Given this conclusion, we do not reach Tucker's additional argument that exclusion of the evidence was not harmless error.

The entry is:

Judgment affirmed.

2. A significant portion of Ramsdell's testimony was given in response to leading questions by defense counsel, which the court could properly consider in evaluating the reliability of his proffered testimony.