MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:       2015 ME 122
Docket:         Was-14-462
Submitted
  On Briefs:    July 1, 2015
Decided:        September 3, 2015

Panel:          SAUFLEY, C.J., and MEAD, GORMAN, JABAR, and HJELM, JJ.

MELANIE (CURRIE) STEADMAN

v.

STEVEN PAGELS

HJELM, J.

[¶1]    Steven Pagels appeals from a judgment of the District Court (Calais, *Alexander, J.*) finding him liable to Melanie (Currie) Steadman for sexual assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress, and awarding Steadman both compensatory and punitive damages.  Pagels contends that the court erroneously admitted evidence of his prior bad acts, *see* M.R. Evid. 404(b), and improperly found Pagels liable for both intentional and negligent infliction of emotional distress.  Pagels also argues that several of the court's findings are not supported by evidence in the record.[1] We affirm.

---

[1]  Our review of the record demonstrates that, contrary to Pagels's argument, the evidence supports the factual findings that he challenges, *see Pelletier v. Pelletier*, 2012 ME 15, ¶ 13, 36 A.3d 903 (findings of fact will be affirmed on appeal if they are supported by competent evidence in the record), and we do not discuss this argument further.

## I. BACKGROUND

[¶2]  We review the evidence in the light most favorable to Steadman as the prevailing party.  *Jacob v. Kippax*, 2011 ME 1, ¶ 2, 10 A.3d 1159.

[¶3]  Steadman, who was born in 1986, is Pagels's biological daughter.  As a child, she lived in the family residence in Cherryfield with Pagels; her mother, who was married to Pagels; her two younger brothers; her half-sister, who was born to her mother from a prior relationship; and occasionally Pagels's son from a prior relationship.

[¶4]  When Steadman was approximately seven or eight years old,[2] Pagels began to sexually assault her in ways that escalated over time.  Early on, the sexual contact consisted of Pagels touching her breasts and genitals.  Pagels began taking Steadman's clothes off during the assaults when she was between the ages of ten and eleven.  When Steadman was approximately twelve years old, her half-sister, whom Pagels had also sexually assaulted, left the family residence to go to college.  Pagels's assaults against Steadman then began to include incidents where he required her to touch his penis, and forcibly penetrated her with his penis,

---

[2]  Pagels filed an untimely answer to the complaint.  Over Steadman's objection, the court allowed the portion of the answer that responded to the allegations in the complaint but did not allow any affirmative defenses, such as the statute of limitations, or a jury trial demand.  The Legislature has repealed the statute proscribing a statute of limitations for claims of sexual acts against minors.  *See* 14 M.R.S. § 752-C (2014).  Additionally, any statute of limitations period is tolled while a plaintiff has a significant mental disability, such as Steadman's.  *See* 14 M.R.S. § 853 (2013) (this section has since been amended, *see* P.L. 2013 ch. 329, § 1 (codified at 14 M.R.S. § 853 (2014))).  Therefore, as the court noted, based on the combined effect of these two statutes, it is doubtful that an affirmative defense based on the statute of limitations would have been availing to Pagels.

including occasions when he bound her with rope. The assaults occurred in various locations. When Steadman attempted to resist, Pagels threatened to beat her if she did not comply. Pagels also told Steadman that if she disclosed the assaults to her mother, the mother would become angry and jealous of Steadman.

[¶5] Nonetheless, in 2001 Steadman reported some of the assaultive conduct to her mother but was too afraid to divulge many of the details. Her mother removed Steadman from the home, and Steadman and her mother ultimately resettled in Calais. Steadman's mother divorced Pagels and was granted "full custody" of Steadman while Steadman's brothers remained with Pagels.

[¶6] On weekends, Steadman's mother returned to the family home in Cherryfield to visit her sons, leaving Steadman alone in Calais. As her mother spent an increasing amount of time at the Cherryfield residence, Steadman eventually learned that her mother had reconciled with Pagels and in fact had remarried him. Later, her mother permanently returned to Cherryfield to live with Pagels. Although her mother left money for food, Steadman often purchased drugs and alcohol instead.

[¶7] After Steadman left her family's home in Cherryfield, she experienced nightmares, cut and burned herself, and used illegal drugs. She left school, although she did graduate from an alternative education program, and as a juvenile was charged with several drug-related offenses. After she completed school she

4

became involved in a series of abusive relationships. She moved to Florida with an abusive man and became addicted to crack cocaine. Later, she returned to Maine and attended a methadone clinic. When she applied to college, she had no choice but to ask Pagels for money to buy books. He insisted she work for him but when he made sexual advances toward her, she left.

[¶8] In July 2012, Steadman commenced this action, asserting claims for sexual assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress. Before trial, Pagels filed a motion in limine to exclude evidence of his past sexual conduct with other females. The court issued a pretrial order denying the motion, but limiting the evidence as follows:

> [Pagels's] motion to exclude evidence of prior "sexualized" acts between [Pagels] and two other named individuals is DENIED. The Court finds this evidence, as described by both [Steadman] and [Pagels], is relevant to show motive, opportunity, pattern, practice and interest in relations with individuals under the age of 18 in the home, office, and on boats under [Pagels's] control. The relevant evidence of acts on this issue would be limited to evidence of contacts between [Pagels] and the witnesses when the witnesses were under the age of 18, and statements [Pagels] made to the witnesses, at any time, regarding the contacts that occurred when the witnesses were under 18.

The court also ruled that Steadman could call one of the witnesses, Pagels's sister, to testify out of order because of scheduling issues and that because of the

sequence of testimony, "some of her testimony may be conditionally admitted, subject to later qualification."

[¶9]   A three-day bench trial began on September 29, 2014.  Steadman testified to the history of assaults inflicted by Pagels, and she further testified about her course of mental health counseling.  She presented evidence that she has been diagnosed with post-traumatic stress disorder, major depressive disorder, obsessive-compulsive disorder, and opiate addiction in remission.  Because of her psychiatric conditions, the Social Security Administration found Steadman to be fully disabled.

[¶10]   During the trial, Steadman also called three witnesses whose testimony is at issue on this appeal.  The first of those witnesses was Steadman's half-sister, who is seven years older than Steadman and whose testimony was presented through a transcript from her deposition.  She testified that when she was an adolescent, Pagels spanked her bare buttocks, touched her breasts, and got on top of her and engaged in simulated intercourse.  She further testified that the sexual assaults against her ended when she left the family residence to go to college.  The second witness was Pagels's sister, who testified that in the mid-1970s, when she was approximately sixteen years old and Pagels was twenty, he sexually assaulted her as many as six times.  The third witness was a woman who had babysat Steadman and her siblings, and who worked briefly for Pagels's

6

boat company. She testified that he sometimes touched her arms in a way that made her feel uncomfortable, and that once he told her that he wanted "to be with" her and invited her to try out the bed in his apartment.

[¶11] Pagels repeatedly objected to evidence of his conduct toward these other females. Although the court sustained some of Pagels's objections, it overruled others. In many of those instances when the court admitted the evidence over Pagels's objections, it explicitly stated that it would consider the evidence only on issues of motive, opportunity, and other purposes that are permitted pursuant to Maine Rule of Evidence 404(b), and that it would not treat the testimony as evidence of Pagels's character.

[¶12] In October 2014, the court issued a twenty-eight-page decision containing comprehensive findings of fact. The court found Pagels liable to Steadman for all three tort claims alleged in her complaint. The court assessed damages without distinguishing among the three liability claims. As special damages, the court awarded $33,594.10 for the costs of past medical care, consultation and treatment; $10,000 for future treatment and counseling; and $45,000 for lost earnings. The court also awarded general damages of $1,300,000 for past, present and future pain, suffering, mental anguish, and loss of enjoyment of life, and it assessed $500,000 in punitive damages.

[¶13]  In its findings, the court did not refer to any of the incidents described at trial by Pagels's sister or the former babysitter.  The court, on the other hand, did refer to the testimony of Steadman's half-sister and set out findings consistent with the testimonial descriptions of Pagels's sexual assaults of her.  The court then stated, "The sexual or sexualized contacts with the stepdaughter ended when she entered college in the Fall of 1997.  The most serious sexual assaults on [Steadman] began shortly thereafter."

[¶14]  Pagels did not file a motion for further findings of fact, *see* M.R. Civ. P. 52(b), but appealed the judgment.

## II.  DISCUSSION

[¶15]  Pagels argues that the court erroneously admitted evidence of prior bad acts and that it improperly found him liable for negligent infliction of emotional distress.  We address these contentions in turn.

## A.    Evidence of Prior Bad Acts

[¶16]  Pagels claims that pursuant to Maine Rule of Evidence 404(b), the court erroneously admitted evidence of his prior bad acts through the testimony of Steadman's half-sister, his own sister, and the woman who had babysat for the family.  He asserts that the evidence of prior bad acts is tantamount to improper character evidence barred by Rule 404(b), and that the court's judgment demonstrates that the court used the evidence improperly.

[¶17]  At the time of trial, Maine Rule of Evidence 404(b) provided, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."[3]  That rule, however, allowed an exception to the general principle of exclusion by permitting the admission of evidence of prior bad acts for any other "permissible purpose," *see State v. DeLong*, 505 A.2d 803, 805 (Me. 1986), such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *In re Rachel J.*, 2002 ME 148, ¶ 17, 804 A.2d 418 (quotation marks omitted); M.R. Evid. 404(b) Advisory Committee's Note.  Here, when the court admitted evidence of prior bad acts that Pagels committed against others, it stated expressly that it would consider that evidence for only those non-propensity purposes.  This is consistent with the court's pretrial order limiting the scope and purpose of evidence of prior bad acts.  We examine this series of rulings for reversible error.

1.    Testimony of Steadman's Half-Sister

[¶18]  At the outset of the trial, Steadman offered into evidence the transcribed testimony of her half-sister.  Pagels objected, claiming that it contained inadmissible evidence of his prior bad acts against her.  The court overruled the

---

[3]  M.R. Evid. 404(b) has since been replaced, effective January 1, 2015, with restyled language that does not affect the substance of the rule. *See* M.R. Evid. 404(b) (restyled Maine Rules of Evidence).

objection, stating that "I am allowing evidence of prior acts as they related to plan, motive, opportunity, consistent practice, things like that, you know, not— obviously, not—obviously, I'm not considering with regard to character, but for those other things." The court also noted that "it [would] have to go over [the deposition] after [it heard] all the testimony." Because Pagels objected to the admission of this evidence, "we review the trial court's decision to admit the evidence pursuant to Rule 404(b) for clear error and its determination pursuant to Rule 403 for an abuse of discretion."[4]   *State v. DeMass*, 2000 ME 4, ¶ 11, 743 A.2d 233; *In re Rachel J.*, 2002 ME 148, ¶ 17, 804 A.2d 418.

[¶19]  In its written decision, the court issued findings, which are based on the testimony of Steadman's half-sister, that Pagels had "inappropriate physical contacts with his stepdaughter" several times and that the contact ended when she entered college in the fall of 1997. The court further found that soon thereafter, "[t]he most serious sexual assaults on [Steadman] began." As described by the court, the sole use of evidence that Pagels sexually assaulted the half-sister therefore was on the issue of Pagels's motive and opportunity—that when one victim of Pagels's sexual assaults left the family home, he redirected his attention to Steadman, which corresponds to and corroborates evidence that the assaults

---

[4]  Although Pagels did not renew his objection to the testimony later in the trial after the court had the opportunity to read the deposition transcript, he made his objection clear on the record when Steadman offered the transcript into evidence. Because the court was fully aware of Pagels's opposition to the evidence, his objection remained preserved.

against her significantly worsened at that time. The court therefore considered this evidence for a "permissible purpose," *DeLong*, 505 A.2d at 805, namely, the evolution of Pagels's tortious conduct committed against Steadman herself.

[¶20] This application of the evidence was relevant to the issues in the case and was not improper, because the court did not treat it as propensity evidence in violation of Rule 404(b). *See State v. Larson*, 577 A.2d 767, 770 (Me. 1990) ("[A] court sitting as the factfinder is presumed to accept admissible evidence only for the purpose for which it may be admitted."). The court's description of the evidence and its express discussion about its significance corroborates the assurance that it articulated on the record when it admitted the evidence over Pagels's objection that it would not consider the deposition testimony as evidence of Pagels's character but would consider it only for purposes not prohibited by Rule 404.

[¶21] Further, although Pagels argues that the magnitude of the damages awarded to Steadman demonstrates that the court took an inflamed view of his conduct, the damages award is fully supported by a measured assessment of evidence of the harm he caused to Steadman. *See Lee v. Scotia Prince Cruises Ltd.*, 2003 ME 78, ¶ 21, 828 A.2d 210. Therefore, nothing in the record supports a claim that the court violated its own ruling, and the court's ruling that admitted the testimony of Steadman's half-sister was not an erroneous application of Rule 404.

[¶22]   Similarly, contrary to Pagels's argument on appeal, admission of Steadman's half-sister's testimony was not improper pursuant to Rule 403 because the court was entitled to conclude that the probative value of that evidence was not substantially outweighed by the risk of unfair prejudice.  *See State v. Lockhart*, 2003 ME 108, ¶ 37, 830 A.2d 433 (evidence determined to be admissible pursuant to Rule 404 is then subjected to scrutiny pursuant to Rule 403); Field & Murray, *Maine Evidence* § 404.4 at 142 (6th ed. 2007).  Any unfair prejudice created by the evidence would be the court's misuse of it as proof of Pagels's propensity to engage in the assaultive conduct alleged by Steadman.  *See State v. Thomes*, 1997 ME 146, ¶ 11, 697 A.2d 1262 (the nature of the prejudice created by admission of evidence of prior bad acts is "an undue tendency to move the tribunal to decide on an improper basis." (quotation marks omitted)); *see also* Field & Murray, *Maine Evidence* § 404.5 at 145 (noting that when evidence of prior bad acts describes sex crimes, the risk of unfair prejudice is enhanced and requires the court to exercise "great caution" in deciding whether to admit the evidence).

[¶23]   Here the risk of unfair prejudice was ameliorated when the court stated on the record that it would not treat the evidence in a way that would improperly breach the prohibition against character evidence created in Rule 404(b).  Because the evidence carried probative value to explain the chronology of abuse that Pagels inflicted on Steadman, and because the court

12

expressly circumscribed the use to which it would put the evidence, it acted within the bounds of the discretion created by Rule 403 when it admitted the evidence.

  2. Testimony of Pagels's Sister and the Family's Babysitter

[¶24] Pagels also argues that the court erred by admitting testimony from his sister and the family babysitter about his conduct toward them. We need not address these claims of error, however, because there is no indication that the court relied on this evidence or gave it any weight whatsoever in reaching its verdict. The court's findings spanned nearly thirty pages, and, in contrast to findings based on the testimony of Steadman's half-sister, they made no mention of the testimony presented by either of these witnesses of prior bad acts, and the findings did not even refer to either of those witnesses.[5] Additionally, Pagels did not move for the issuance of further findings of fact to address the question of whether the testimony of either his sister or the former babysitter influenced the court's verdict in any way. Thus, we are left without any suggestion in the court's decision that it treated their testimony as material to its adjudication of Steadman's claims. In fact, the absence of any reference to this evidence in the court's findings suggests that the court placed no weight on it, even though the court had concluded that the

---

 [5] The court's findings made reference to a babysitter who described Steadman's behavior, but that babysitter was a different person than the one who testified about Pagels's advances toward her.

evidence was admissible. Therefore, even if the court committed error[6] when it admitted that testimony—an issue we need not decide—Pagels has not demonstrated that the evidence was a factor in the court's decision, and any error was therefore harmless. *See* M.R. Civ. P. 61.

B.     Emotional Distress Claims

[¶25]  The court found Pagels liable to Steadman on her claims for both intentional infliction of emotional distress (IIED) and negligent infliction of emotional distress (NIED).  Pagels contends here that the court erred by finding him liable for NIED because that claim was subsumed by the liability Steadman established for IIED.  *See Curtis v. Porter*, 2001 ME 158, ¶ 19, 784 A.2d 18. Pagels goes on to argue that as a result of the court's determination of liability for the two counts, the court awarded damages in excess of what could be supported by only the IIED claim—in effect, giving Steadman a double recovery.  Pagels, however, did not argue to the court at any time that a finding of liability for IIED would, as a matter of law, foreclose a finding of liability for NIED.  Pagels could have raised the issue preemptively prior to trial, and the argument also could have been the basis for post-judgment relief in the trial court.  Because he did not do so,

---

[6]  Pagels objected to the testimony of his sister and therefore preserved the claim of error for appellate review.  He did not, however, object to the portions of the former babysitter's testimony he challenges here.  (He did object to other portions of that testimony, and the court sustained many of them.)  If we were to reach that challenge, we therefore would consider the issue only for obvious error. *See Searles v. Fleetwood Homes of Pa., Inc.*, 2005 ME 94, ¶ 33, 878 A.2d 509.

Pagels has failed to preserve this issue for appeal and raises it for the first time here, and so we do not consider it. *See Dobson v. Dep't of the Sec'y of State*, 2008 ME 137, ¶ 3, 955 A.2d 266. Rather, Pagels's challenge to the court's finding that he is liable to Steadman on her claim for NIED must be limited to the more general question of whether the evidence is sufficient to support the verdict on that count. *See Pelletier v. Pelletier*, 2012 ME 15, ¶ 13, 36 A.3d 903.

[¶26] To succeed on her NIED claim, Steadman was required to prove that Pagels owed a duty to her; that he breached that duty; that Steadman sustained severe emotional distress; and that Pagels's breaching conduct caused that harm. *Curtis*, 2001 ME 158, ¶ 18, 784 A.2d 158. In *Curtis*, we noted that there is no general duty to avoid causing emotional harm to others through negligent conduct. *Id.* For that reason, claims for NIED are often pleaded improvidently, and, in fact, are more properly treated as claims for recovery of emotional distress damages that must be pursued through tort claims that are less limited in scope. *Id.* ¶ 22. Nonetheless, independent claims for NIED may be viable in bystander claims or when the parties stand in a "special relationship" to each other. *Id.* ¶ 19.

[¶27] The relationship between a custodial parent and child is a "special relationship" that gives rise to a heightened responsibility of care. *See Estate of Cilley v. Lane*, 2009 ME 133, ¶ 17, 985 A.2d 481; *Lenoci v. Leonard*, 21 A.3d 694, 699 (Vt. 2011); *see also* Restatement (Third) of Torts: Liability for Physical

& Emotional Harm § 40(b)(7) (2012) (a custodian has a special relationship with the person who is in that person's custody, if the custodian is required by law to exercise custody and "has a superior ability to protect" the person in custody). Such a relationship therefore supports a claim for NIED.

[¶28] Here, the evidence warranted a finding by the court that Pagels was Steadman's custodial parent during the years when he assaulted her and that the parties were therefore in a special relationship that imposed a legal duty on Pagels to avoid causing severe emotional harm to his daughter through conduct that was sexually and physically assaultive and emotionally abusive. Therefore, presented with this evidence, the court acted within its authority in finding that the relationship between Steadman and Pagels gave rise to a duty that supports a claim for NIED.

[¶29] The evidence also plainly supported the court's findings that Pagels breached this duty,[7] that Pagels's tortious conduct caused injury to Steadman, and that the injury Steadman suffered rose to the level of severe emotional distress. The court therefore did not err when it concluded that Pagels was liable to Steadman on her claim for NIED.

---

[7] Pagels argues there is no evidence that any actionable conduct was "negligent." In making that argument, Pagels views an NIED claim too narrowly. A claim for NIED is based on the breach of a duty. For the reasons set out in the text, Pagels was subject to a duty of care not to inflict severe emotional harm on his daughter. The evidence warranted a finding that he breached that duty, thus rendering him liable for NIED.

[¶30] Additionally, the court's judgment establishes that the court did not award double damages for the same emotional distress resulting from Pagels's negligent *and* intentional infliction of emotional distress. In its order, the court addressed the liability issues first and concluded that Steadman had proved each of the three tort claims that she had asserted against Pagels. The court then addressed the amount of Steadman's total general and special damages without attributing or assigning her injuries to a specific cause of action. It is therefore clear that the judgment is for a comprehensive but single award of damages, even though there were several legal theories that supported that unified award.

[¶31] We therefore conclude that the court's formulation of the judgment and award of damages was not erroneous.

The entry is:

> Judgment affirmed.

---

**On the briefs:**

Daniel A. Pileggi, Esq., Roy, Beardsley, Williams & Granger, LLC, Ellsworth, for appellant Steven Pagels

Sarah I. Gilbert, Esq., Elliott & MacLean, LLP, Camden, for appellee Melanie (Currie) Steadman